IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,  :
                           :
      Plaintiff,           :
                           :
vs.                        :        Case No. 4:20-cr-00212
                           :
ABRAHAM CHRISTOPHER SMITH, :        PLEA HEARING TRANSCRIPT
                           :
      Defendant.           :
- - - - - - - - - - - - - -X


                           Courtroom, Fourth Floor
                           U.S. Courthouse
                           123 East Walnut Street
                           Des Moines, Iowa
                           Thursday, June 10, 2021
                           1:08 p.m.


BEFORE:  THE HONORABLE ROSS A. WALTERS, Magistrate Judge.


APPEARANCES:

For the Plaintiff:        ADAM J. KERNDT, ESQ.
                          United States Attorney's Office
                          U.S. Courthouse Annex
                          110 East Court Avenue, Suite 286
                          Des Moines, Iowa  50309


For the Defendant:        NICHOLAS A. SARCONE, ESQ.
                          Stowers & Sarcone, PLC
                          650 South Prairie View Drive
                          Suite 130
                          West Des Moines, Iowa  50266-6684


                KELLI M. MULCAHY, CSR, RDR, CRR
                   United States Courthouse
                123 East Walnut Street, Room 115
                   Des Moines, Iowa 50309

1      P R O C E E D I N G S

2           (In open court, with the defendant present.)

3           THE COURT:  Please be seated, everybody.  And good

4   afternoon to you all.

5               Give me a moment here to get sorted out.

6               This is the United States vs. Abraham Christopher

7   Smith.  It's Criminal No. 20-cr-212.

8               Mr. Sarcone, I understand your client comes here today

9   with the intention of withdrawing his plea of not guilty to

10  Count 1 of the indictment against him and that he proposes to

11  enter a plea of guilty to that charge under the terms of a plea

12  agreement, which provides that if everything goes through, then

13  at the time of sentencing, the other counts charged against your

14  client would be dismissed.

15              Is that all accurate?

16          MR. SARCONE:  That is correct, Your Honor.

17          THE COURT:  Thank you.

18          Mr. Smith, let me address you preliminarily about

19  something.  I'm what's called a United States Magistrate Judge.

20  I can take a plea of guilty from you here today; however, only

21  with your consent and the consent of the Government.  If you

22  decide to have me take your plea of guilty, here's what's going

23  to happen:  We'll conduct a plea proceeding, and I'll make a

24  recommendation, presumably, at the end of that proceeding

25  whether or not your plea of guilty should be accepted.

1          Now, assuming I make that recommendation, and assuming

2    it's approved by a district judge, a different kind of judge,

3    you'll then appear at a sentencing proceeding presided over by

4    the district judge, not by me.  Do you understand that?

5          THE DEFENDANT:  I do.

6          THE COURT:  Thank you.

7          You have signed a form which I'm holding up here by

8    which you give your consent to me as a magistrate judge

9    conducting a plea of guilty proceeding with you here today.  You

10   signed this, I believe; is that correct?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Did you read it over before you signed it?

13         THE DEFENDANT:  I did.

14         THE COURT:  Understood what you read?

15         THE DEFENDANT:  I did.

16         THE COURT:  Talked it over with Mr. Sarcone?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Understanding your right to withhold your

19   consent, would you like me to go ahead today as a magistrate

20   judge and take a plea of guilty from you?

21         THE DEFENDANT:  Yes, please.

22         THE COURT:  I will go ahead and do so, sir.

23         If you'd please rise, the clerk is going to administer

24   an oath to you.

25         THE DEPUTY CLERK:  Raise your right hand.

1          ABRAHAM CHRISTOPHER SMITH, DEFENDANT, SWORN

2          THE DEPUTY CLERK:  You may be seated.

3          THE COURT:  Mr. Smith, you just took an oath in which

4   you promised to tell me the truth in answer to some questions

5   I'm going to be asking you in our proceeding here today.  It is

6   very important that you tell me the truth because if you do not,

7   if you were to lie to me, you could be prosecuted for the crimes

8   of perjury or making a false statement, and anything you say

9   here today in our plea proceeding could be used against you in a

10  prosecution for those crimes.  Do you think you understand that?

11         THE DEFENDANT:  I do.

12         THE COURT:  As we go through here today, and it's going

13  to take a little bit of time, I'm going to be giving you some

14  information about the consequences of your plea of guilty, the

15  rights that you give up by pleading guilty, and the sentencing

16  process in federal court, and I'll be telling you some other

17  things.

18         It is very important that you understand everything I

19  tell you and that you understand all of my questions.  If at any

20  time you don't understand something I say, would you please let

21  me know that so I can back up and go over it again and make sure

22  we're communicating?  Will you do that for me?

23         THE DEFENDANT:  I will.

24         THE COURT:  Thank you.

25         You're here today with your attorney, Mr. Sarcone.

1  He's here to assist you.  At any time during our discussion if

2  you want to call a timeout and talk to your lawyer about

3  something, that's your right.  You just let me know, and I'll

4  give you whatever time you need to talk to Mr. Sarcone.

5  Understood?

6          THE DEFENDANT:  Uh-huh.  Yes.

7          THE COURT:  All right.  You have to answer audibly, yes

8  or no or --

9          THE DEFENDANT:  Yes.

10          THE COURT:  -- something else, but --

11          THE DEFENDANT:  I understand.

12          THE COURT:  -- the mere "hmm" or something won't work.

13          THE DEFENDANT:  Gotcha.

14          THE COURT:  You were charged in a multi-count

15  indictment.  In fact, I believe -- let me just double-check.

16  It's a four-count indictment.  Count 1 of the indictment is the

17  one I'm told you're going to plead guilty to here today, and

18  that's enticement and attempted enticement of a minor.

19          But I do want to remind you that you have previously

20  entered pleas of not guilty to each and all of the charges

21  against you.  You do have the right to persist in pleading not

22  guilty and to insist that your guilt or innocence be determined

23  only by trial by jury, a trial by jury at which the Government

24  would have to prove you guilty beyond a reasonable doubt.

25          In other words, you don't have to plead guilty here

1    today if you do not want to.  Do you understand that?

2              THE DEFENDANT:  I do.

3              THE COURT:  As we go through, if you change your mind,

4    decide you no longer wish to plead guilty, simply let me know

5    that.  I'll stop and not proceed any further.  Understood?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Mr. Smith, I need to get some background

8    information from you.  For the record, would you please give me

9    your full, complete legal name?

10             THE DEFENDANT:  Abraham Christopher Smith.

11             THE COURT:  Thank you, sir.

12             How old a man are you?

13             THE DEFENDANT:  I'm 39.

14             THE COURT:  How far did you go in school?

15             THE DEFENDANT:  I have a bachelor's degree in secondary

16   education.

17             THE COURT:  Thank you.

18             I'm required to ask you, are you a United States

19   citizen?

20             THE DEFENDANT:  I am.

21             THE COURT:  I'm also required to ask you, are you able

22   to read, write, speak, and understand the English language?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Do you have any problems reading things?

25             THE DEFENDANT:  No, sir.

1              THE COURT:  Have you ever been diagnosed with any sort

2    of mental illness or mental condition or been treated or

3    evaluated for anything like that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Now, I did see something in the Pretrial

6    Services Report of some time ago that mentioned that you had

7    been diagnosed with anxiety.  Is that true?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And I believe that was at the Altoona

10   Family Medicine Clinic.

11             THE DEFENDANT:  Yes.

12             THE COURT:  And they prescribed medication for you?

13             THE DEFENDANT:  Yes.

14             THE COURT:  What was that medication?

15             THE DEFENDANT:  Sertraline.

16             THE COURT:  Are you still taking it?

17             THE DEFENDANT:  I am.

18             THE COURT:  And that's been provided to you over at the

19   jail?

20             THE DEFENDANT:  It is.  Though the dosage has been

21   increased.

22             THE COURT:  All right.  Now, do you take any other

23   medication for your mental health status?

24             THE DEFENDANT:  No.

25             THE COURT:  The sertraline, how does it affect you?

1           THE DEFENDANT:  It -- well, it's a daily pill, so -- I

2   haven't been off of it in a long time, so it's hard to really

3   put it into words, but it just kind of calms me down and it

4   makes it so that I can focus on one thing at a time and not

5   worry about everything at the same time.  It also calms

6   nerves --

7           THE COURT:  All right.

8           THE DEFENDANT:  -- so to speak.

9           THE COURT:  So it helps calm your anxiety --

10          THE DEFENDANT:  Absolutely.

11          THE COURT:  -- so that you can focus and pay attention

12  to things one at a time?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Well, that's what I'm leading up to

15  because, you know, here today you're making an important

16  decision about your life, and also a plea proceeding is often

17  not a comfortable one for someone in your position, and I

18  realize that.  I want to make sure today that despite your

19  anxiety that you had in the past that you're able to focus

20  clearly and understand everything that we do today.  Do you

21  think you are?

22          THE DEFENDANT:  Absolutely.

23          THE COURT:  All right.  Now, other than the anxiety

24  that you described and the medication that you're taking for it,

25  have you been evaluated for any other kind of mental health

1  condition?

2          THE DEFENDANT:  No.

3          THE COURT:  All right.  Have you consumed or, to your

4  knowledge, are you under the influence of anything else, such as

5  alcohol, drugs, or medication?

6          THE DEFENDANT:  No.

7          THE COURT:  Whether legal or illegal?

8          THE DEFENDANT:  No.

9          THE COURT:  All right.  Have you taken any prescription

10 medication, other than the sertraline, within the past 24 hours?

11         THE DEFENDANT:  Naproxen.

12         THE COURT:  What's the naproxen for?

13         THE DEFENDANT:  Naproxen sodium is like a high-strength

14 Aleve.  It's for back pain, chronic back pain.

15         THE COURT:  So you have chronic back pain?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Does that help with it?

18         THE DEFENDANT:  Yeah.

19         THE COURT:  Now, is that something that affects your

20 ability to think clearly and make decisions?

21         THE DEFENDANT:  No.  I've been dealing with it for a

22 long time.

23         THE COURT:  Other than the sertraline and the naproxen,

24 are there any other medications that you have been taking in the

25 past 24 hours, prescription or nonprescription?

1          THE DEFENDANT:  No.

2          THE COURT:  Here's a different question.  Has a doctor

3   prescribed medication for you for something that for some reason

4   you have decided not to take?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And what's that?

7          THE DEFENDANT:  It's pantoprazole.

8          THE COURT:  What's that?

9          THE DEFENDANT:  It's like a stomach acid thing.  It's

10  for gastro reflux.  GRD, G-R-D, is what she said.  So it's like

11  heartburn.  But when I was put on it, she suggested that I go on

12  it 30 days at a time and then come off of it to see if it was --

13  if the problem persisted, and I've stopped taking it to see if

14  the problem's persisting, and it's not, so I've opted out of it.

15         THE COURT:  All right.  Thank you.  Any other

16  medication like that that you've opted out of?

17         THE DEFENDANT:  No.

18         THE COURT:  Now, I need to know from you, do you think

19  you have any physical or mental condition that might affect your

20  ability to understand the proceedings here today and to make an

21  important decision about your life?

22         THE DEFENDANT:  No.

23         THE COURT:  All right.  Now, you have had anxiety in

24  the past.  It's being treated now.  But as we go through here,

25  if you find yourself being anxious, not being able to focus, not

1   understanding, if for any reason that condition or any other

2   condition is starting to -- you believe is starting to interfere

3   with your processing what's going on today, would you let me

4   know that?

5          THE DEFENDANT:  I will.

6          THE COURT:  Thank you.

7          I want to remind you that you do have the right to the

8   assistance of an attorney throughout everything having to do

9   with this case; before trial, during trial should there be one,

10  and after trial in connection with any appeal that might be

11  necessary.  And if you cannot afford the costs of an attorney at

12  any point, at any point along the line, the Court would appoint

13  a lawyer for you at no or reduced expense to you.

14         Now, you're appearing here today with Mr. Sarcone, and

15  you retained him to represent you in this case; is that true?

16         THE DEFENDANT:  Yes.

17         THE COURT:  But it's important that you realize if for

18  any reason you were no longer able to afford Mr. Sarcone's

19  services, at your request, and if you qualified, the court would

20  appoint a lawyer for you at no or reduced expense to you.

21         Do you understand that?

22         THE DEFENDANT:  I do.

23         THE COURT:  Bottom line, you're entitled to be

24  represented by an attorney, either of your own selection or, if

25  necessary, one appointed for you, all the way along the line,

1  including any appeal that might ultimately be necessary.  Do you

2  understand you have that right?

3          THE DEFENDANT:  I do.

4          THE COURT:  Thank you.

5          Have you been satisfied with the services that

6  Mr. Sarcone has provided to you?

7          THE DEFENDANT:  Absolutely.

8          THE COURT:  Thank you.

9          Let's talk about the offense that I'm told you're going

10  to plead guilty to.  That offense is in Count 1 of the

11  indictment, which charges you with enticement and attempted

12  enticement of a minor.

13          It is charged in that count that between about October

14  9, 2020, to about October 28, 2020, in this district, that you

15  did use a facility, means of interstate commerce, specifically a

16  cellular telephone system and the Internet, to knowingly

17  persuade, induce, and entice or attempt to persuade, induce, and

18  entice a person under the age of 18 years of age, identified in

19  the indictment as Minor Victim No. 1, to engage in any sexual

20  activity for which you could be charged with a criminal offense;

21  specifically, sexual abuse in the third degree under Iowa Code

22  Section 709.4.

23          That is the crime that you're charged with in the

24  indictment.  Do you think you understand the nature of the

25  offense you're charged with?

1          THE DEFENDANT:  I do.

2          THE COURT:  Let me explain to you what it is the

3  Government would have to prove beyond a reasonable doubt to

4  convict you of that crime if you decided to go ahead and have a

5  trial by jury.

6          At a trial by jury, the Government would have to prove

7  each and all of the following things beyond a reasonable doubt:

8  First, that you knowingly used a facility or means of interstate

9  commerce to persuade, induce, entice, or coerce an individual

10  under the age of 18 years to engage in sexual activity.  Second,

11  the Government would have to prove that you believed that such

12  individual was less than 18 years of age.  Third, the Government

13  would have to prove beyond a reasonable doubt that based upon

14  the sexual activity that did occur, you could have been charged

15  with a criminal offense under the laws of the state of Iowa,

16  specifically, as alleged in the indictment, Iowa Code Section

17  709.4, which is sexual abuse in the third degree.

18          Those are the things the Government would have to prove

19  beyond a reasonable doubt in order to convict you of the crime

20  you're charged with in Count 1.  Do you think you understand

21  what would have to be proved against you?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And, Mr. Kerndt, let me ask you, did the

24  Court accurately summarize the elements of the offense?

25          MR. KERNDT:  Yes, Your Honor.

1          THE COURT:  Mr. Smith, have you fully discussed this

2     case with your attorney, Mr. Sarcone?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have you gone over all the facts in the

5     case so that you think you understand what it is, the reasons,

6     the facts, that the Government bases its prosecution of you on?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Mr. Sarcone, based upon your discussions

9     with your client, do you believe he understands the nature of

10    the offenses he is charged with and what it is the Government

11    would have to prove in order to convict him of the crime charged

12    in Count 1?

13          MR. SARCONE:  I do, Your Honor.

14          THE COURT:  Thank you.

15          Mr. Smith, by pleading guilty to a crime, you give up

16    certain very important rights that you have under the United

17    States Constitution.  I'm now going to explain to you the rights

18    that you give up by pleading guilty.

19          Now, most of these rights have to do with your right to

20    have a trial by jury of the charge against you.  If the Court

21    accepts a plea of guilty from you to the count charged -- excuse

22    me -- the crime charged in Count 1, you will be giving up your

23    one and only opportunity for a jury trial.  Do you think that

24    you understand that?

25          THE DEFENDANT:  I do.

1          THE COURT:  As a defendant in a criminal case, you have

2     the right to what is called a speedy public jury trial.  Now,

3     what that means is a panel of prospective jurors, U.S. citizens

4     drawn at random from a cross section of the community here in

5     south central Iowa, would be summoned into court to be potential

6     jurors in your case.

7          Once here, you and your attorney would take part in the

8     selection of 12 of those persons who would be the trial jurors

9     who would decide your case.  The jurors would have to promise

10    under oath to fairly and justly decide your case.  The jurors

11    would be told by the judge that you are presumed innocent and

12    not guilty and that to find you guilty the jurors would have to

13    unanimously, that means all 12 of them would have to, agree that

14    you are guilty beyond a reasonable doubt.

15         But if the Court accepts a plea of guilty from you, you

16    give up the right to a speedy public jury trial as I have just

17    described.  Do you think you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you also understand, sir, that by

20    pleading guilty you give up what we call the presumption of

21    innocence, because when you plead guilty, you admit you are not

22    innocent?  Do you understand that as well?

23         THE DEFENDANT:  Yes.

24         THE COURT:  At a trial by jury, you would have the

25    right to confront the witnesses against you.  Now, that means

1  the witnesses would have to testify under oath and in your

2  presence.  You would have an opportunity to see and hear them,

3  and you would have a chance, through your attorney, to

4  cross-examine, that means to question the witnesses against you.

5          But if the Court accepts a plea of guilty from you, you

6  give up the right to confront the witnesses against you.  Do you

7  understand that as well?

8          THE DEFENDANT:  I do.

9          THE COURT:  Now, at a trial by jury, you would not have

10  to put on any defense.  You don't have to prove anything.  It is

11  the Government that must prove you guilty beyond a reasonable

12  doubt.  But if you wanted to, at a trial by jury, you would have

13  the opportunity to present witnesses and evidence in your own

14  defense.

15          At your request, the Court would issue subpoenas, those

16  are court orders, to compel witnesses to appear and testify for

17  you.  Now, that's called your right to compulsory process.  If

18  you cannot afford the cost of the subpoenas, the Government

19  would be required to pay for them.

20          But if the Court accepts a plea of guilty from you, you

21  give up the right to put on a defense to the charge to which you

22  plead guilty.  Do you think you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Also, you have the right not to incriminate

25  yourself.  That means you would not have to testify at a jury

1   trial if you did not want to, and if you chose not to testify,

2   the prosecutor could not comment on that fact.  And if you asked

3   the judge to do so, the judge would tell the jury they could not

4   hold the fact you did not testify against you.

5          If you wanted to, at a trial by jury, you would have

6   the right and the opportunity to testify in your own defense,

7   but if the Court accepts a plea of guilty from you, you give up

8   the right to testify in your own defense at a jury trial.  Do

9   you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Sir, do you also understand that by

12   pleading guilty you give up the right not to incriminate

13   yourself because that's just what you do when you plead guilty,

14   you incriminate yourself by admitting your guilt?  Do you

15   understand that as well?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Now, if you were found guilty by the jury,

18   you would have the right to appeal the verdict, sentence, and

19   judgment of the Court to the Court of Appeals, and, as I told

20   you previously, you would have the right to be represented on

21   appeal by an attorney, including, if you could no longer afford

22   to hire your own attorney, an attorney that would be appointed

23   for you at no or reduced expense do you.

24          Again, sir, do you think that you understand you have

25   that right?

1          THE DEFENDANT:  I do.

2          THE COURT:  Thank you.

3          Now, I have tried to explain to you the jury trial

4  rights you have and the rights that you give up by pleading

5  guilty.  Have you understood all those things as I've explained

6  them to you?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Understood all my questions to this point?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Have you truthfully answered all of them?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Thank you.

13         Let me explain to you the maximum punishment that

14  you're facing by pleading guilty to the crime that you're

15  charged with.  Now, the crime of enticement and attempted

16  enticement of a minor carries with it a sentence from ten years

17  in prison up to a maximum of life in prison.  You may be subject

18  to paying a fine of up to $250,000.  You'll be required to serve

19  a term of supervised release after a period of imprisonment of

20  at least five years, and you'll be required to pay a $100

21  special assessment to the crime victim fund.

22         Now, in terms of prison time, you heard me tell you

23  that the time in prison that you're facing is from ten years to

24  life.  Now, that means that there is a mandatory minimum period

25  of imprisonment of ten years that you're facing by pleading

1  guilty and it may be up to the rest of your life.  And that, of

2  course, is up to the judge at the time of sentencing.

3          Do you think you understand the maximum penalty that

4  you are facing by pleading guilty?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You hesitated a moment there.  Do you have

7  any question about it?

8          THE DEFENDANT:  No.  That's just pretty big.

9          THE COURT:  It is pretty big.  But it's ten years to

10 life.  It's very important that you know that's what you're

11 exposing yourself to if you plead guilty.  Once again, sir,

12 understood?

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  Thank you.

15         Also, and it's covered in the plea agreement, but you

16 may be required to pay restitution for any harm that your

17 criminal conduct may have caused to the victim and perhaps other

18 persons.  At this time, I'm not told of any specific restitution

19 amount or claim of restitution that may be made, but that is

20 something that may happen later.

21         Do you think you understand that?

22         THE DEFENDANT:  I do.

23         THE COURT:  Mr. Kerndt, just to make sure, is

24 forfeiture an issue for this defendant?

25         MR. KERNDT:  Yes, Your Honor.  And it's outlined in

1  paragraph 18 of the plea agreement.

2          THE COURT:  Thank you.

3          The forfeiture would be the cell phone, I take it?

4          MR. KERNDT:  Correct, Your Honor.

5          THE COURT:  And is there associated computer equipment?

6          MR. KERNDT:  No associated computer equipment.  The

7  images and the cell phone itself, Your Honor.

8          THE COURT:  I understand those were taken off of the

9  cell phone.

10         But that cell phone will be forfeited to the United

11  States Government.  Do you understand that, sir?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Thank you.

14         Mr. Kerndt, did I accurately describe the maximum

15  punishment the defendant is facing and the mandatory minimum

16  punishment by pleading guilty?

17         MR. KERNDT:  You did, Your Honor.

18         THE COURT:  Thank you.

19         Mr. Smith, by pleading guilty to this crime, there will

20  be other consequences to you beyond the punishment imposed by

21  the Court.  These are things that happen to a person who has a

22  serious crime on their record.  I can't tell you what everything

23  is, but it may be that you'll not be permitted to serve on a

24  jury, hold public office.  You'll not be able to possess

25  firearms and ammunition.  And there will be other consequences

1  to you as a person with a serious criminal record.

2        I want to point out one in particular.  By pleading

3  guilty to this offense, following any period of imprisonment,

4  you'll be required to register as a sex offender on the sex

5  offender registry and to maintain your registration as required

6  by law.

7        Do you understand that's something that will happen to

8  you as a result of pleading guilty?

9        THE DEFENDANT:  Yes, sir.

10       THE COURT:  And it's covered in the plea agreement, and

11 we'll discuss it in a little more detail later on.

12       Let me explain to you the sentencing process in federal

13 court.  I've already told you that if your plea of guilty is

14 accepted, you'll appear before a district judge, a different

15 kind of judge than myself, and it will be the district judge who

16 imposes punishment on you.

17       In passing sentence, the judge is going to first

18 consider the advisory sentencing guidelines of the United States

19 Sentencing Commission.  These guidelines will call for a

20 recommended range of punishment for you based upon certain

21 factors that apply to you individually; for example, your

22 criminal history or lack of criminal history, the nature of the

23 offense to which you've pleaded guilty, and the circumstances

24 involved in the offense.  And your plea agreement covers some of

25 those circumstances, which I'll go over later when we discuss

1  the plea agreement.  And there may be other factors the judge

2  will consider.

3       The judge will consider those factors and then will

4  determine what the recommended range of punishment for you is

5  under the federal sentencing guidelines.  And the judge will

6  carefully consider what those guidelines call for, but you need

7  to know the sentencing guidelines are not mandatory.  The judge

8  does not have to follow them.

9       After determining how the sentencing guidelines apply

10  to you, the judge is going to then proceed to impose upon you

11  the sentence that the judge feels is reasonable under all of the

12  circumstances up to the maximum provided by law, which for this

13  offense, as I've told you, is up to a maximum of life in prison.

14       Now, the judge may vary or depart from the sentencing

15  guidelines and give you a sentence that is higher than what the

16  guidelines call for or may give you a sentence that is less than

17  what the guidelines for.  The only thing the judge must do is

18  give you the mandatory minimum period of imprisonment of ten

19  years in prison, but beyond that, it's all within the discretion

20  of the sentencing judge.  Do you think you understand that?

21       THE DEFENDANT:  I do.

22       THE COURT:  Now, let me ask you, did you discuss with

23  Mr. Sarcone what the federal sentencing guidelines are?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  Did you go over with him how they might

1   apply to you under various circumstances?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And as a result of that, do you think you

4   understand, have a pretty good idea of what the sentencing

5   guidelines are and what you may be facing under them?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Mr. Sarcone, let me ask you, have you had a

8   full discussion with your client concerning how the sentencing

9   guidelines might apply to him?  And if there's any record you'd

10  care to make concerning the sentencing guidelines or any

11  particular issue under them, please take the opportunity to do

12  so at this time.

13         MR. SARCONE:  Thank you.  I appreciate that, Your

14  Honor.

15         Your Honor, I have had a discussion, multiple

16  discussions, with Mr. Smith about the application of the

17  sentencing guidelines in this particular case.  The plea

18  agreement is a plea to the enticement count.  The child --

19  production of child pornography count actually carries a higher

20  guideline range than the enticement count does by itself, and

21  I've explained that to Mr. Smith.

22         It is our position that Mr. Smith possessed some

23  defenses to the production of child pornography count, and so

24  that is, in part, how the workings of plea negotiations occurred

25  and we got to a plea to the enticement count.

1          Because our position is the Eighth Circuit case law

2    requires that in order to be convicted of production of child

3    pornography, it must have been the dominant purpose of the

4    solicitation or enticement of the sexual activity, and it's our

5    belief and position that Mr. Smith did not act at any time with

6    the purpose of doing that and that the video that was created

7    and referenced in the plea agreement was a spontaneous act that

8    occurred during that time.

9          Is that right, Mr. Smith?

10          THE DEFENDANT:  That's correct.

11          MR. SARCONE:  Right.  So but the guidelines for

12    enticement contain a cross-reference to the child pornography

13    guidelines, and I've explained that to Mr. Smith, and within the

14    plea agreement we have made certain stipulations to relevant

15    conduct.

16          And I believe, and the Government can correct me if I'm

17    wrong, but I believe it's the intention of the parties that

18    those stipulations don't automatically trigger the

19    cross-reference; that probation will review the relevant conduct

20    that is -- excuse me -- will review the offense conduct and

21    determine whether or not the cross-reference to the child

22    pornography guidelines apply.

23          So while at this point neither party is saying or

24    agreeing that they do apply, Mr. Smith does know that probation

25    will make a recommendation within the PSR as to whether or not

1 the cross-reference does apply, and if the Court then finds that

2 it applies, he would be subject to the child pornography

3 guidelines and what they call for.

4          THE COURT:  And you've had a thorough discussion with

5 Mr. Smith about that?

6          MR. SARCONE:  Yes, Your Honor.

7          THE COURT:  And, Mr. Smith, do you understand what

8 Mr. Sarcone has been talking about, this cross-reference to the

9 guideline that pertains to the production of child pornography?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Mr. Kerndt, is there any record you'd care

12 to make on this subject?

13          MR. KERNDT:  Thank you, Your Honor.

14          Mr. Sarcone very well described what the circumstances

15 are here, Your Honor.  The Government does not take the position

16 that the stipulated-to factual basis necessarily automatically

17 applies to the cross-reference.  The Government maintains and

18 reserves the position to argue that it does.  And so in sum,

19 this is a decision that will be determined at the time of

20 sentencing in this matter.

21          THE COURT:  So as you both have discussed, the

22 applicability of the cross-reference to production of child

23 pornography will be an important issue to be resolved by the

24 judge at the time of the sentencing, and, of course, that is a

25 matter that is vested in the judge's judgment of the matter.

1 | Correct?

2 |         MR. KERNDT:  Correct.  And both parties maintain the

3 | ability to make arguments as they deem appropriate with respect

4 | to the law and the facts.

5 |         THE COURT:  All right.  Agreed, Mr. Sarcone?

6 |         MR. SARCONE:  Agreed, Your Honor.

7 |         THE COURT:  Thank you.

8 |         Because of that issue and others that may pertain to

9 | the sentence you receive, and because, as I told you previously,

10 | the sentence you receive is entirely within the discretion of

11 | the district judge, guided by, but not bound by, the sentencing

12 | guidelines, because of that -- and also, as you've heard, a

13 | probation officer is going to prepare a presentence report on

14 | you which the judge will use to help determine how the

15 | sentencing guidelines apply to you and what sentence you ought

16 | to receive, and, you know, sometimes additional facts come to

17 | light in the pretrial preparation of pretrial -- I'm sorry --

18 | the presentence report that could affect the sentence you

19 | receive.

20 |         Because it's all up to the judge, other facts may come

21 | to light, there are issues that have to be resolved at the time

22 | of sentencing, as we've discussed, nobody can promise you as you

23 | sit here today what sentence you're going to receive at the end

24 | of this process.  Do you think that you understand that?

25 |         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Mr. Smith, it does sometimes happen that a

2    person gets to the time of sentencing and they receive a

3    sentence that they don't like, they're disappointed by it and

4    they're upset.  If, if that should happen to you, you need to

5    understand that you cannot try to turn the clock back and take

6    away your plea of guilty just because the judge gives you a

7    sentence that you do not like.

8          Do you think you understand that?

9          THE DEFENDANT:  I do, sir.

10          THE COURT:  Thank you.

11          You need to know that there's no parole in the federal

12    criminal justice system.  You're subject to serving all of any

13    period of imprisonment given to you.  Now, sometimes a person

14    can earn a small reduction in the time spent in prison for

15    what's called good behavior, but that's not something the Court

16    has anything to do with.  That's up to prison officials.

17          Do you understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  We'll talk about it a little bit later when

20    we go through the plea agreement, but as I have mentioned

21    before, following your release from prison, you'll be required

22    to serve a term of supervised release of, I believe -- it's at

23    least five years and may be up to the rest of your life.

24          Supervised release is a status in which there are

25    certain rules that you have to follow.  If you violate the

1  rules, you're subject to being brought back into court and

2  possibly sent back to prison for a period of time.  Do you

3  understand that, sir?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  We've spent some time here, Mr. Smith,

6  talking about the sentencing process in federal court, the fact

7  the sentence you receive is solely in the discretion of the

8  sentencing judge, guided by, but not bound by, the sentencing

9  guidelines; that you're subject to receiving any sentence the

10  judge feels is reasonable under all the circumstances up to the

11  maximum provided by law, and that the only thing the judge must

12  give you is that mandatory minimum period of imprisonment of ten

13  years.

14          We have talked about how some of the guideline issues,

15  sentencing guidelines issues, may apply to you.  We've talked

16  about the fact there's no parole in the federal criminal justice

17  system, and I just talked to you about supervised release.

18          That's a lot of area we've covered.  Now, I want to

19  make sure, do you understand everything that we've talked about

20  in the sentencing process here in court today?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Do you have any questions at this point

23  about anything that we have discussed?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Thank you, sir.

1          I want to -- well, first, counsel, I understand, for

2   the record, that there is a plea agreement.  I have a copy of it

3   here, and I believe it's been signed by everybody.  Is that

4   correct?

5          MR. KERNDT:  Correct, Your Honor.  It's been filed at

6   Docket 33.

7          THE COURT:  And it's already been filed, so I don't

8   need to order that it be filed.  It's already filed of record.

9   Thank you for that.

10         Would you put a copy of the plea agreement,

11  Mr. Sarcone, before your client.

12         MR. SARCONE:  It is in front of him, Your Honor.

13         THE COURT:  Thank you.

14         Mr. Smith, I'm going to ask you some questions about

15  the plea agreement, go over some of the terms with you, not all

16  of them, though they all are important, but there are some to

17  which I want to direct your particular attention.

18         First, though, before you signed this plea agreement,

19  did you read it over?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Thoroughly?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Completely?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Every bit of it?

1          THE DEFENDANT:  Every bit of it.

2          THE COURT:  Did you understand what you read?

3          THE DEFENDANT:  For the most part.  And what I didn't,

4    I asked Mr. Sarcone.

5          THE COURT:  You were anticipating my next question,

6    then.  Did you go over the plea agreement completely and

7    thoroughly with Mr. Sarcone?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And if you had any questions about the plea

10   agreement, and apparently you did, did you ask those questions

11   of Mr. Sarcone?

12         THE DEFENDANT:  I did.

13         THE COURT:  Did he adequately answer any questions you

14   may have had?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Now, having, as you told me, completely and

17   thoroughly read the plea agreement yourself and going over it

18   with Mr. Sarcone in detail and asking the questions you had of

19   him, do you think you have a complete and thorough understanding

20   of all the terms of the plea agreement?

21         THE DEFENDANT:  I do.

22         THE COURT:  Do you understand that by signing the plea

23   agreement, you are bound to its terms?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Thank you, sir.

1          Let me, as I say, go over some of the terms of the plea

2     agreement with you.  First, generally, this is the type of plea

3     agreement that gives the sentencing judge, the district judge,

4     the right to accept the plea agreement, reject the plea

5     agreement, or defer a decision whether to accept or reject the

6     plea agreement until after the judge reviews the presentence

7     report I told you would be prepared on you.  Do you think you

8     understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Let's go over to page 2 of the plea

11     agreement, paragraph 4.  Do you see it there?

12          THE DEFENDANT:  Uh-huh.

13          THE COURT:  Now --

14          THE DEFENDANT:  Yes.  I'm sorry.

15          THE COURT:  Okay.  Now, this has to do with supervised

16     release we talked about a few moments ago.  And I've already

17     told you that there are some rules of supervised release you

18     have to follow and that if you violate them you are subject to

19     being sent back to prison.

20          I do want to point out that that additional prison

21     sentence could be up to five years in prison without any credit

22     for the time previously served.  Do you think you understand

23     that?

24          THE DEFENDANT:  I do.

25          THE COURT:  Thank you.

1          Let's go over to page 3, paragraph 7 of the plea

2   agreement, and it goes on over to page 4.

3          Now, this paragraph has within it a number of

4   subparagraphs, subparagraphs 7(1) through (4), and then there's

5   a separate subparagraph (5) with some additional subparagraphs

6   under that.

7          What subparagraphs (1) through (4) are, these are facts

8   that you have admitted are true concerning the offense of

9   enticement of a minor as charged against you in Count 1.

10          Do you understand you have admitted all these facts are

11   true?  I'm talking now about subparagraphs (1) through (4).

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Are they all true?  And if you want to take

14   the opportunity to read them again, please do so now.

15          THE DEFENDANT:  They're true.

16          THE COURT:  Thank you.

17          Let's go over now to subparagraph 5 on the next page,

18   page 4, and there are three sub-subparagraphs under subparagraph

19   (5).  Now, these are admissions you have made concerning what's

20   called relevant offense conduct.  And are the -- well, the

21   facts, first, contained in subparagraphs (5)(a) and (b), are

22   these facts contained herein also true and correct?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Now, counsel and Defendant, I'm talking to

25   you all, pertaining to subparagraph (5)(c), this is a provision

1   in which the parties have agreed that the relevant conduct

2   admissions are not an explicit agreement, that the guideline

3   reference -- basically, it's not explicit agreement that the

4   defendant should be sentenced for the production of child

5   pornography.  That's what it boils down to; is that correct?

6   That's a reserved issue?

7            MR. KERNDT:  That issue is reserved, yes, Your Honor.

8   We're simply saying that the guideline of 1B1.2, which sometimes

9   comes into play if there's an express agreement within the plea

10  agreement as to certain facts, that we're not relying on 1B1.2

11  for anything.

12           THE COURT:  And we basically discussed that previously,

13  correct, Mr. Sarcone?

14           MR. SARCONE:  Yes, Your Honor.

15           THE COURT:  I mentioned that subparagraph specifically

16  because it's not an admission of fact, it's, rather, an

17  understanding the parties have as to the significance of the

18  admissions with regard to relevant offense conduct.

19           I think I've got that clearly.  Do I not?

20           MR. KERNDT:  Yes, Your Honor.

21           MR. SARCONE:  Yes, Your Honor.

22           THE COURT:  Thank you.

23           Mr. Smith, before the Court can accept a plea of guilty

24  before you here today, the Court has to be convinced there's a

25  factual reason, a factual basis, to believe that you have

1  committed the offense charged in Count 1 of the indictment, that

2  being, again, enticement and attempted enticement of a minor.

3  So I've got to ask you about some of these facts here to make

4  sure that there is a basis to believe that you, in fact,

5  committed the offense charged.

6          I'm going to focus first on the subparagraph 7(1).  The

7  minor victim identified in Count 1 was 15 years of age through

8  October of 2020.  Do you understand that to be true?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  And apparently you turned 39 years of age

11 on October 25, 2020.  Correct?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  You lived in Pleasant Hill, didn't you?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And at all times you knew the minor

16 victim's age; is that true?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  In other words, you knew that she was 15

19 years old and not 18 years old, correct?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  At the time of the offense, you were a

22 full-time teacher at Southeast Polk High School; is that true?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Had been for several years?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  And were so in October 2020, correct?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And the minor victim was a student at the

4   same school at which you were a teacher, correct?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Let's look at subparagraph 7(2).  Beginning

7   by at least October 9, 2020, and continuing to about October 28,

8   2020, did you use your iPhone to communicate with the minor

9   victim with text messages and Internet-based chat?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And did the subject of those text messages

12   and the chat, by that means, did you knowingly -- do you admit

13   that you knowingly persuaded, induced, and enticed the minor

14   victim to engage in sexual activity with you?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  And you understand, don't you, that a

17   cellular telephone is the Internet or facilities of interstate

18   commerce?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  All right.  Now, many of the communications

21   between you and the minor victim, would you agree that they were

22   sexually charged in nature?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  That they relate to in-person sexual acts

25   that had previously occurred between you and the minor victim?

1          THE DEFENDANT:  Some of them, yes, sir.

2          THE COURT:  Some of them did.

3          And also in connection with those communications, it's

4    said here in the last line of subparagraph 7(2) that you were

5    planning and soliciting to engage in further sexual acts with

6    the minor victim.  Is that true?  I think that's what it says.

7          THE DEFENDANT:  Pardon me a second.

8          (The defendant conferred with Mr. Sarcone.)

9          THE DEFENDANT:  Okay.  Then yes, sir.

10          THE COURT:  It is true?  Okay.  Thank you.

11          Looking now at subparagraph 7(3), is it true that you

12    performed in-person sexual acts with the minor victim, that

13    being Minor Victim No. 1, on at least two separate dates in

14    October 2020?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  And did those sexual acts include

17    intercourse and oral-genital sex?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you agree and understand that those

20    in-person sexual acts with the minor victim violated the

21    criminal laws of the state of Iowa?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And do you understand and agree that you

24    could have been charged with, at a minimum, a violation of Iowa

25    Code Section 709.4, sexual abuse in the third degree?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Now, the iPhone that you used, I'm looking

3   now at subparagraph 7(4), that was an Apple iPhone that bears

4   the serial number that's contained here in the paragraph, but

5   that was the iPhone you used; is that correct?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And do you know that that iPhone was not

8   manufactured in the state of Iowa?

9          THE DEFENDANT:  Yes.

10          THE COURT:  You agree with that; is that correct?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And therefore it must have been shipped or

13   transported across a state line to get into your possession in

14   the state of Iowa; is that true?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Let's look now at subparagraph 5.  I'm

17   going to talk now specifically about subparagraphs 5(a) and (b).

18   On October 24, 2020, did you meet the minor victim here in Polk

19   County and engage in sexual acts with the minor victim?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And during the sexual activity on October

22   24, did you knowingly and intentionally use your iPhone to

23   record the minor victim performing oral-genital sex on you?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And that video file of the sex act lasted

1   approximately one minute, 15 seconds?  Do you know that to be

2   true?

3           THE DEFENDANT:  I take it for what it's worth there or

4   what it says in here.  I never saw it.

5           THE COURT:  I understand.  But you understand that it

6   was made, don't you?

7           THE DEFENDANT:  Yes.

8           THE COURT:  You understand what it showed, don't you?

9           THE DEFENDANT:  Yes.

10          THE COURT:  And you have no dispute with regard to the

11   length of the video, do you?

12          THE DEFENDANT:  No.

13          THE COURT:  Also, specifically, the file names are

14   named in here in the argot of the computer speak, but you

15   have -- that's accurate as far as you know; is that true?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Now, you maintained the video on your

18   iPhone until the police took it from you on October 28, 2020; is

19   that true?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Let's look at subparagraph 5(b).  Now, that

22   iPhone was seized from you, again, on October 28, 2020.  We've

23   established that.  Is that true?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Was there something called a private photo

1  vault application on your iPhone?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Now, it says here that that application

4  allows the user to import photos and videos into the application

5  and secure them behind a PIN or a pattern lock.  Did you

6  understand that was -- that's what that application allows you

7  to do?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  The application also allowed a user, you,

10 to take photos or videos directly into the application.  Do you

11 know that the application had that function as well?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  And on the iPhone, had you stored multiple

14 sexually provocative images of Minor Victim No. 1?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  And you used that application we've

17 described to do that; is that true?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And among those provocative stored images

20 was the video that we described previously in subparagraph 5(a);

21 is that correct?

22             THE DEFENDANT:  I assume, based on what they found.

23 Again, I never saw it, but I -- I am assuming they are correct,

24 yes.

25             THE COURT:  I understand.  But you have no reason to

1 dispute that; would that be true?

2          THE DEFENDANT:  No.

3          THE COURT:  Thank you.

4          Let's go over to page 5 of the plea agreement and also

5 page 6.  And I'm going to discuss with you paragraph 11, which

6 pertains to the sentencing guidelines we talked about

7 previously, and I'm going to go over some of the things that you

8 and the Government have agreed to recommend to the sentencing

9 judge as to how the guidelines should apply to you.

10          First, in subparagraph (b), that has to do with a

11 sentencing guideline that deals with whether the minor was in

12 custody, care, or supervisory control of the defendant under the

13 guideline, and you and the Government have agreed to -- you've

14 stipulated as a recommendation -- by the way, sir, when you see

15 the word "stipulation," that means agreed, and you and the

16 Government have agreed to recommend to the Court, the sentencing

17 judge, that that guideline applies to you and leads to a

18 two-level upward adjustment under the sentencing guidelines.  Do

19 you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And the effect of that on you in the

22 sentencing guidelines, that would have been something you

23 specifically discussed with Mr. Sarcone; is that true?

24          THE DEFENDANT:  Yep.  Yes, sir.

25          THE COURT:  Okay.  Let's look at subparagraph (c).

1  Now, this deals with a sentencing guideline that is concerned

2  with whether you unduly influenced the minor to engage in

3  prohibited sexual conduct as set forth in the guideline.

4        And once again, you and the Government have agreed to

5  recommend to the sentencing judge that this guideline should

6  apply to you and that it results in a two-level upward

7  adjustment under the sentencing guidelines.  Do you understand

8  that's what you've agreed to?

9        THE DEFENDANT:  Yes, sir.

10       THE COURT:  And, again, sir, is this something you

11  would have specifically discussed with Mr. Sarcone?

12       THE DEFENDANT:  At length, yes, sir.

13       THE COURT:  Thank you.

14       Let's look at subparagraph (d).  This has to do with

15  whether the offense involved the use of a computer or an

16  interactive computer service to persuade, induce, entice,

17  coerce, or facilitate the travel of the minor to engage in

18  prohibited sexual conduct, again, as provided for in the

19  sentencing guideline referenced herein.

20       Once again, you and the Government have agreed to

21  recommend to the sentencing judge, the district judge, that this

22  two-level upward adjustment provided in that guideline should be

23  applied to you.  Do you understand you've agreed to that?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  And once again, sir, this would have been

1   something that you specifically discussed with Mr. Sarcone; is

2   that correct?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Let's look at subparagraph (e).  And the

5   question here is whether the offense involved the commission of

6   a sex act or sexual conduct as described in the sentencing

7   guideline referenced in the subparagraph.  And once again, you

8   and the Government have agreed to recommend to the district

9   judge that the two-level enhancement -- I'm sorry -- the

10  two-level upward adjustment provided in the guideline should be

11  applied to you.

12           Again, sir, do you understand that you've agreed with

13  that?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  And, again, sir, is this a subject you

16  would have discussed specifically with Mr. Sarcone?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  And then lastly, subparagraph 11(f), and

19  under this subparagraph the question is whether you engaged in a

20  pattern of activity involving prohibited sexual conduct as

21  described in the sentencing guideline referenced in this

22  subparagraph.

23           Once again, you and the Government have agreed to

24  recommend to the district judge that the five-level upward

25  adjustment of the sentencing guidelines provided in this

1    guideline should apply to you.  Do you understand that you have

2    agreed to that?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  And, again, sir, is this a guideline issue

5    that you would have specifically discussed with Mr. Sarcone?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Thank you.

8            Let's go down to paragraph 12, which deals with

9    acceptance of responsibility.  In this paragraph, the Government

10   agrees that if you hold up your end of the bargain under the

11   plea agreement, they're going to agree to recommend to the

12   district judge that you receive credit for accepting

13   responsibility at the time of sentencing.  And that's a good

14   thing for you under the sentencing guidelines.  You understand

15   that?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Once again, this is something you would

18   have discussed with Mr. Sarcone; is that true?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  I do want to stress, however, that this is

21   a recommendation, and like any recommendation made to the judge,

22   the judge does not have to follow it.  If the judge would not

23   follow this recommendation that you be given credit for

24   accepting responsibility, you cannot withdraw your plea of

25   guilty simply because the judge doesn't accept the

1  recommendation.  Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Let's go over briefly page 9, forfeiture.

4          And thank you for reminding me of this initially,

5  Mr. Kerndt.

6          But once again, you're going to forfeit that Apple

7  phone, iPhone, to the Government.  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  In this paragraph you've agreed not to

10  resist this and to consent to the forfeiture.  Understood?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Going over to page 10, paragraph 23, that's

13  restitution.  You may be, as I -- there may be an issue

14  concerning restitution that should be made for the harm that you

15  allegedly caused as a result of the criminal activity that you

16  were engaged in, and this paragraph provides that you agree to

17  make restitution, and if a payment plan is scheduled through the

18  probation office, that you'll use your best efforts to comply

19  with that plan and to pay the restitution.  Do you understand?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Let's go over to page 11, paragraph 26.

22  This has to do with the sex offender registration.  I've already

23  told you that your conviction will require you to register as a

24  sex offender under the sex offender registration after you're

25  released from prison, and you told me that you understand that.

1 | Is that correct?

2 | THE DEFENDANT:  Yes, sir.

3 | THE COURT:  That has a number of requirements.  You'll

4 | be required to meet all the sex offender registration

5 | requirements, and those requirements may, depending upon the

6 | law, apply throughout the remainder of your life.  Do you

7 | understand that?

8 | THE DEFENDANT:  I do.

9 | THE COURT:  In this paragraph, you've said you're going

10 | to keep your registration current and you're going to notify the

11 | state sex offender registration agency of any changes to your

12 | name, residence, employment, any change in your relevant status.

13 | Do you understand you've agreed to do that?

14 | THE DEFENDANT:  Yes, sir.

15 | THE COURT:  You've also promised to comply with the

16 | requirements that you periodically verify your sex offender

17 | registration information with the appropriate authorities.  Do

18 | you understand you've made that promise?

19 | THE DEFENDANT:  Yes, sir.

20 | THE COURT:  And you're told that if you fail to

21 | register as a sex offender, there may be further federal or

22 | state penalties.  In fact, this may well be a violation of

23 | criminal law in addition to a violation of the conditions of

24 | your supervised release if you fail to register as a sex

25 | offender.  Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And your supervised release rules will

3  require that you register as a sex offender and maintain that

4  registration.  Again, sir, do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Following your release from prison, you'll

7  be required to provide proof of registration to the probation

8  officer within 72 hours of your release.  Do you understand

9  that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Let's go down and look at paragraph 27 on

12  page 12.  The minor victim that we've talked about, as well as,

13  perhaps, I don't know, others who may claim to have been

14  victimized by your conduct, may have civil claims against you as

15  a result of what you did, and this paragraph simply makes clear

16  that this plea agreement is totally apart from that and you

17  remain subject to any civil actions that may be taken against

18  you as a result of the conduct that you're pleading guilty to.

19  Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And then let's go over to page -- or

22  paragraph 29 on pages 13 and 14.  Now, this is a waiver of

23  certain rights you have to appeal and to seek post-conviction

24  review.

25          Now, whenever you hear the word "waiver," that means

1  you've given up some rights.  Let me tell you what you've given

2  up here.  In this paragraph, if your plea is accepted and it

3  goes all the way through, that means you've waived, and that

4  means you've given up, any right you have to appeal your

5  conviction in this case.

6       There are two aspects to a criminal case, Mr. Smith.

7  The first is the conviction, the finding that you committed the

8  crime that you're charged with.  You've given up your right to

9  appeal that in this paragraph or to raise motions or defenses

10  that could be made to your conviction.

11       The fact that you're guilty of the crime that you admit

12  to, you've given up the right to challenge that.  Do you

13  understand that?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  But both you and the Government have

16  reserved the right to appeal the sentence that you receive to

17  the extent permitted by law.  So you reserved that right.  Do

18  you understand that?

19       THE DEFENDANT:  Yes.

20       THE COURT:  And so has the Government.

21       Now, going over to the next page, page 14, at the top,

22  you have also waived, subject to a couple of exceptions I'll go

23  over in a few moments time, but you've also waived your right to

24  contest your conviction and sentence through what are called

25  post-conviction proceedings.

1            Let me explain.  Sometimes after a case is all over and

2     a person is serving their time, they can come back into court

3     and ask the court to review their conviction and sometimes their

4     sentence under a section of the law which deals with what we

5     call post-conviction proceedings.

6            Now, in this paragraph, you've also waived, that is,

7     given up, your right to seek post-conviction review of your

8     conviction and sentence.  Do you understand that?

9            THE DEFENDANT:  Yes, sir.

10            THE COURT:  Now, at the very last sentence of this

11     paragraph, there are a couple of exceptions to that waiver of

12     your right to seek post-conviction review, and that is that the

13     waiver does not extend to what we call post-conviction relief

14     based on the grounds of ineffective assistance of your attorney

15     or misconduct by the prosecutor.  But other than that, you've

16     completely given up your right to seek post-conviction review of

17     your conviction and sentence.  Do you understand that?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  Do you think you have a clear idea of the

20     rights that you've given up here in paragraph 29 of the plea

21     agreement?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  Now, counsel, are there any other terms of

24     the plea agreement that you'd like me to expressly discuss with

25     the defendant?

1          MR. KERNDT:  No, Your Honor.

2          MR. SARCONE:  No, Your Honor.

3          THE COURT:  Thank you.

4          Mr. Kerndt, as I went through the plea agreement with

5    the defendant, I discussed the facts that he has admitted are

6    true concerning his involvement in the crime charged in Count 1.

7    On the basis of my discussion with the defendant on that

8    subject, are you satisfied with the record on factual basis?

9          MR. KERNDT:  I am, Your Honor.

10         THE COURT:  Thank you.

11         Let me ask you, Mr. Sarcone, have you had full access

12   to the Government's discovery in this case?

13         MR. SARCONE:  I have, Your Honor.

14         THE COURT:  Do you believe that discovery of the facts

15   assembled by the Government against your client would support a

16   factual basis to believe that your client committed the offense

17   charged in Count 1 of the indictment against him?

18         MR. SARCONE:  I do, Your Honor.

19         THE COURT:  Mr. Smith, we've been going here for some

20   time, and thank you for bearing with me.  It does take time to

21   go through this.  We're nearly done.  Have you followed along

22   with everything?

23         THE DEFENDANT:  Absolutely.

24         THE COURT:  Haven't gotten too anxious?

25         THE DEFENDANT:  Relatively speaking, no.

1          THE COURT:  We're on the same page?

2          THE DEFENDANT:  Yes.

3          THE COURT:  You've understood everything I've told you

4    so far?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And truthfully answered all my questions?

7          THE DEFENDANT:  Absolutely.

8          THE COURT:  A few final things I want to discuss with

9    you finally.  Has anybody made any promises to you, other than

10   the promises specifically described in the written plea

11   agreement?

12         THE DEFENDANT:  No, sir.

13         THE COURT:  Has anybody promised you or told you what

14   your sentence will be?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  Has anyone threatened, forced, or pressured

17   you in any way to get you to plead guilty?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  Is your plea of guilty, then, a decision

20   which you have made of your own free will?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Counsel, any other matters you'd like me to

23   go over as a part of this colloquy?

24         Mr. Kerndt?

25         MR. KERNDT:  No, Your Honor.

1              THE COURT:  Mr. Sarcone?

2              MR. SARCONE:  No, Your Honor.

3              THE COURT:  As I say, we've been over quite a bit here

4    today, Mr. Smith.  Once again, have you understood all the

5    information I have given you?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Understood all of my questions?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Truthfully answered all of them?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Final opportunity.  Do you have any

12   questions for me about anything that we have discussed?

13             THE DEFENDANT:  No, sir.

14             THE COURT:  After all we've gone through, and

15   understanding the rights that you give up by pleading guilty and

16   the consequences of your plea of guilty, do you still wish to

17   plead guilty to the charge of enticement and attempted

18   enticement of a minor as charged against you in Count 1 of the

19   indictment?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Are you going to plead guilty to that crime

22   because you, in fact, committed that crime?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Would you please rise, sir.

25             I'm going to read or paraphrase the charge against you

1  in Count 1 of the indictment, and then I'll ask you to plead to

2  it.

3        It is charged in Count 1 of the indictment that during

4  the period beginning by at least October 9, 2020, and continuing

5  to on or about October 28, 2020, in this district, that you did

6  use a facility and means of interstate commerce, specifically a

7  cellular telephone system and Internet, to knowingly persuade,

8  induce, and entice and attempt to persuade and induce and entice

9  a person under the age of 18 years of age, identified as Minor

10  Victim No. 1 -- that you persuaded, induced, and enticed or

11  attempted to do that with that person to engage in any sexual

12  activity for which you could be charged with a criminal offense;

13  specifically, sexual abuse in the third degree under Iowa Code

14  Section 709.4.

15        That is the charge against you in Count 1 of the

16  indictment, sir.  How do you plead to it?

17        THE DEFENDANT:  I plead guilty.

18        THE COURT:  Thank you, sir.  You may be seated.

19        Let the record reflect I find the defendant is fully

20  competent and capable of entering a plea of guilty.  I find his

21  decision to plead guilty is voluntarily, knowingly, and

22  intelligently made, and not the result of any force, threats, or

23  promises beyond those promises specifically provided in the

24  written plea agreement.

25        I find that Defendant understands the charge to which

1   he has entered a plea of guilty.  I find that there is a factual

2   basis for his plea of guilty.  I find that Defendant knows the

3   maximum punishment that can be imposed upon him as a result of

4   his plea of guilty, as well as the mandatory minimum punishment

5   which must be imposed.

6        I find the defendant understands his jury rights and

7   has voluntarily waived those rights.  I find that Defendant

8   understands those terms of the plea agreement pertaining to the

9   waiver of his right to appeal or to collaterally attack his

10  conviction and sentence through post-conviction review.

11       Therefore, I find that Defendant should be adjudged

12  guilty of the crime of enticement and attempted enticement of a

13  minor as charged in Count 1 of the indictment against him, that

14  in violation of Title 18, United States Code, Section 2422,

15  subparagraph (b), that upon his plea of guilty to the same.

16       I will report and do hereby recommend that the

17  defendant's plea of guilty be accepted.  The record should

18  reflect that in a few moments time, in open court, I'll provide

19  a copy of my report and recommendation to counsel and to the

20  defendant.

21       The parties are advised that they have 14 days from

22  today's date to file any objections to the report and

23  recommendation.  If a party fails to file an objection, that

24  party will have waived the right to make any objections to the

25  report and recommendation.

1          The parties are notified that the assigned district

2    judge may accept or reject the report and recommendation, the

3    defendant's plea of guilty, and the plea agreement by entry of a

4    written order to that effect.  The assigned judge may also defer

5    acceptance of the plea agreement until after the judge has

6    received and reviewed the presentence report.

7          This case is assigned to District Judge Stephanie Rose.

8    I'm advised by her chambers that she will set a sentencing

9    proceeding on October 19, 2021, at 10 a.m.  That will be in Room

10   145 here in the United States Courthouse.

11         Again, I anticipate that Judge Rose will, by separate

12   order, set sentencing for October 19, 2021, at 10 a.m. in this

13   courthouse.

14         A separate order will follow from Judge Rose setting

15   the time of sentencing, as well as scheduling the Government's

16   offense conduct statement, the status conference -- presentence

17   status conference date, and Presentence Investigation Report

18   deadlines.

19         The defendant has now entered a plea of guilty.  He's

20   been previously detained, and he will remain detained until the

21   time of sentencing.

22         Counsel, anything further in this matter at this time?

23         Mr. Kerndt?

24         MR. KERNDT:  No, Your Honor.

25         THE COURT:  Mr. Sarcone, from you?

1          MR. SARCONE:  No, Your Honor.

2          THE COURT:  Thank you.  We're in recess on this matter,

3    and this defendant is continued to be detained.

4          (Proceedings concluded at 2:07 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

56

1                  C E R T I F I C A T E

2              I, Kelli M. Mulcahy, a Certified Shorthand Reporter of

3    the State of Iowa and Federal Official Realtime Court Reporter

4    in and for the United States District Court for the Southern

5    District of Iowa, do hereby certify, pursuant to Title 28,

6    United States Code, Section 753, that the foregoing is a true

7    and correct transcript of the stenographically reported

8    proceedings held in the above-entitled matter and that the

9    transcript page format is in conformance with the regulations of

10   the Judicial Conference of the United States.

11             Dated at Des Moines, Iowa, this 18th day of July,

12   2021.

13

14                                  _Kelli M. Mulcahy_

15                                  Kelli M. Mulcahy, CSR, RDR, CRR
                                    Federal Official Court Reporter

16

17

18

19

20

21

22

23

24

25