IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-CR-212 |
| | ) | |
| v. | ) | |
| | ) | |
| ABRAHAM C. SMITH, | ) | DEFENDANT'S SENTENCING BRIEF |
| | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS**

Page

I.   Introduction………...………………………………………………………………...……………..2

II.  Procedural History………...…………………………………………………….……………..2

III. Current Sentencing Law……………………...………………………………………….................2

IV.  Calculating the Starting Point……………………………………………………………………..3

    A.   Criminal History Score…………………………………………………………………3

    B.   Advisory Guideline Starting Point…………………………………………………………..3

V.   Sentencing Factors and Other Considerations as Applied to Mr. Smith..………...…………...…15

    A.   The Nature and Circumstances of the Offense……………………………………………..15

    B.   Need to Avoid Unwarranted Sentencing Disparities…………………………………………16

    C.   Jail and Prison in the Age of Covid 19……………………………………………………..17

VI.  Variance under 18 USC Section 3553(a)……………………………………………………………18

        1. Recommended Sentence…………………………………………………………………18

**I.** **INTRODUCTION**

Abraham Smith respectfully submits this brief to assist the Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment set forth in 18 U.S.C. § 3553(a) and considering *U.S. v. Booker*, 543 U.S. 220 (2005).

**II.** **PROCEDURAL HISTORY**

A 4-count indictment was filed on December 16, 2020. Mr. Smith pled guilty to Count I of the Indictment on June 10, 2021. Count I charged Mr. Smith with enticement of a Minor in violation of 18 U.S.C. § 2422(b). A final-presentence report was filed at Docket 51 on October 8, 2021. The issues for sentencing include the application of the cross reference in USSG §2G1.3(c)(1) and therefore Mr. Smith's guidelines calculations, and generally the sentence which should be imposed..

**III.** **CURRENT SENTENCING LAW**

In Booker's remedial opinion the Supreme Court excised statutory provisions of law which made the United States Sentencing Guidelines mandatory. *Booker*, 543 U.S. at 258-265. Thus, the Guidelines are now only advisory in nature offering general advice to a sentencing court. *Rita v. U.S*., 551 U.S. 338, 358 (2007). The calculated Guideline range is now simply the "starting point" or "initial benchmark" the Court should use in fashioning a sentence. *Gall v. U.S.*, 552 U.S. 38, 50 (2007). The Court is required to tailor the sentence in light of other statutory concerns. *Kimborough v. U.S.,* 552 U.S. 85, 101 (2007). That is to say that the advisory Guideline's initial benchmark is to be filtered through the factors specified in 18 U.S.C. 3553(a). *Rita*, 551 U.S. at 358. Those factors include:

1) The nature and circumstances of the offense and the history and characteristics of the Defendant;

      2) The need for the sentence imposed;

      2) the kinds of sentences available;

      3) the need to avoid unwarranted sentencing disparity; and

      4) the need to provide restitution.

      Id. 18 U.S.C. Section 3553(a)(1-3), (a)(6-7).

In considering these factors, the Court is not to presume that the "starting point" suggested by the Guidelines is reasonable. *Gall*, 552 U.S. at 50. The Court "must make an individualized assessment based on the facts presented." Id.

      Moreover, the statutory factors in 18 U.S.C. 3553(a) do not provide the Court with the only basis to consider a sentence different from that suggest by the Guidelines starting point. The Court is also free to fashion a different sentence based solely on the Court's own policy disagreements with the Guidelines. *Kimborough*, 552 U.S. at 101; see also *Spears v. U.S.*, 555 U.S. 261 (2009).

      In the end the Court must comply with the instruction contained in 3553(a) that the Court "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing…" *Id* (citations omitted). This can only be achieved if the sentencing judge, "consider[s] ever convicted person and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Gall*, 552 U.S. at 52 (citations omitted).

## IV.   CALCULATING THE STARTING POINT

### A. Criminal History Score

All parties agree Mr. Smith has virtually no criminal history and is therefore a Category I.

### B. Advisory Guideline Starting Point

The probation office has determined that Mr. Smith's base offense level should be a 32 due to its belief that the cross reference contained within USSG §2G1.3(c)(1) applies to this case. Probation then adds eight levels of specific offense conduct enhancements which were stipulated too by Mr. Smith in his plea. Additionally, five levels are added due to the application of §4B1.5(b)(1)[1]. Finally, three levels are taken off for acceptance of responsibility yielding a total offense level of 42. For the reasons discussed below, Mr. Smith believes that the cross reference does not apply, yielding a base offense level of 28 pursuant to §2G1.3(1)(a)(3) and an adjusted offense level of 38 for a sentencing range of 235-293.

1. The Cross Reference in §2G1.3(c)(1) Does Not Apply in this Case.

USSG §2G1.3(c)(1) states in relevant part:

> If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct….

The key phrase the Court must interpret in considering the application of this guideline provision is "for the purpose of". The question is whether Mr. Smith engaged in sexually explicit conduct with the minor victim in this case "for the purpose of" producing a visual depiction, or in this case the video found on Mr. Smith's phone which depicted the minor victim giving Mr. Smith oral sex[2]. Mr. Smith did not and therefore the cross reference should not apply.

---

[1] This was also stipulated too by Mr. Smith. However, as discussed below Mr. Smith believes that while this enhancement technically applies, this case falls out of the heartland of those to which it was intended to apply.

[2] Probation also notes there was another video which depicted only the minor victim's face and seemed vis-à-vis the context, to be of her masturbating or simulating masturbation. However, the text messages and other evidence makes clear that this video and any other picture or video which was sent to Mr. Smith by the minor victim was made previously and not at the behest of Mr. Smith. Thus, these materials do not satisfy the "use" prong of the cross-reference (causing, transporting, permitting, or offering by notice or advertisement, a minor to engage in sexually explicit conduct…). The Government cannot argue otherwise, and therefore, only the single, minute long video which depicts oral sex between the minor victim and Mr. Smith can potentially form the basis for the application of the cross-reference.

The language of the cross reference largely tracks the language of the Child Pornography Production statute – 18 U.S.C. § 2251(a). Specifically, the "for the purpose" language is the same. That statute has been interpreted by the 8th Circuit to be a specific intent statute. *U.S. v. Fortier*, 956 F.3d 563, 567 (8th Cir. 2020). That is to say that it requires a heightened mental state. As the 8th Circuit put it:

> We begin with what the government had to prove. The statute contains a number of verbs that describe the actus reus of the offense, ranging from "employs" and "uses" to "persuades," "induces," "entices," and "coerces." 18 U.S.C. § 2251(a); *see also Ortiz-Graulau v. United States*, 756 F.3d 12, 19 (1st Cir. 2014) (discussing the various prohibited acts). To violate the statute, Fortier must have done one of those things in an effort to get C.J. and S.K. "to engage ... in sexually explicit conduct." He does not dispute "us[ing]" them, nor could he. We have already held that filming minors engaged in sexually explicit conduct is one type of "use[ ]" under the statute, *see United States v. Stong*, 773 F.3d 920, 924–25 (8th Cir. 2014); *United States v. Vanhorn*, 740 F.3d 1166, 1168 (8th Cir. 2014), and here, Fortier admitted on the stand that he recorded his sexual encounters with them.
>
> The sole dispute is over one of the statute's mens-rea requirements. The one at issue here is whether Fortier "use[d]" the girls with a particular "purpose" in mind: to "produc[e]" a "visual depiction of [the sexually explicit] conduct." 18 U.S.C. § 2251(a); *see United States v. Goodwin*, 719 F.3d 857, 862 (8th Cir. 2013) (applying a similarly worded provision). This mens-rea element, because it requires a mental state "above and beyond" the intent to perform one of the acts listed in the statute, is called a specific intent. 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e), at 476–77 (3d ed. 2018); *United States v. Sterley*, 764 F.2d 530, 532 (8th Cir. 1985) (per curiam) ("Specific intent, as the term implies, means more than the general intent to commit the act.")
>
> This specific-intent requirement was met if there was sufficient proof that one of Fortier's "dominant purposes" was to create a visual depiction of his sexual acts with the girls. Final Jury Instr. No. 15, ECF No. 85; *see also United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009) (same). If there was, then the government has satisfied its burden. If the only evidence shows something different—like he recorded them on his iPhone by complete accident—then we must reverse Fortier's exploitation conviction.

*Fortier*, 956 F.3d at 567 (8th Cir.), *reh'g denied* (May 18, 2020), *cert. denied*, 141 S. Ct. 824, 208 L. Ed. 2d 404 (2020). In a case decided last December, the Fourth Circuit, in discussing the

propriety of a jury instruction which replaced the word "the" in the phrase "with the purpose of" and replacing with "a" -- "with a purpose of" -- provided a lengthy and thorough explanation of the mens rea requirement necessary to have committed a violation of the statue. *United States v. McCauley*, 963 F.3d 690, 695-697 (4th Cir. 2020). That explanation canvassed many of the decisions of the circuit courts of appeal, including the 8th Circuit, and is worth reprinting in full:

> We begin as always with the statutory text. *In re Total Realty Mgmt., LLC*, 706 F.3d 245, 251 (4th Cir. 2013). Section 2251(a) criminalizes "employ[ing], us[ing], persuad[ing], induc[ing], entic[ing], or coerc[ing] any minor to engage in ... any sexually explicit conduct *for the purpose of producing* any visual depiction of such conduct." 18 U.S.C. § 2251(a) (emphasis added).³ Put most simply, the statute requires the government to prove that creating a visual depiction was "the purpose" of an accused for engaging in sexual conduct, not merely "a purpose" that may happen to arise at the same instant as the conduct.
>
> Distinguishing between "the" and "a" is not picking at the district court's instruction in this instance—here, there is a fundamental difference between the definite and indefinite article. *See Nielsen v. Preap*, ––– U.S. ––––, 139 S. Ct. 954, 965, 203 L.Ed.2d 333 (2019) ("Our reading [of 8 U.S.C. § 1226(c)] is confirmed by Congress's use of the definite article in 'when the alien is released.' " (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012))); *Work v. United States ex rel. McAlester-Edwards Coal Co.*, 262 U.S. 200, 208, 43 S.Ct. 580, 67 L.Ed. 949 (1923) (differentiating between "the" and "an"). The difference is whether the accused's alleged purpose carries some predominant weight, as required by the plain statutory language, or whether filming was one among many, potentially much more significant purposes. Indeed, "a purpose" could be merely one in ten as the government erroneously argued in closing below, J.A. 894–95, without considering any relative weight amongst these varying purposes. Under this formulation, "a purpose" to record could be "merely incidental" to other more significant purposes. *See United States v. Torres*, 894 F.3d 305, 312–13 (D.C. Cir. 2018) (finding evidence sufficient that "obtaining the sexually explicit images was itself important to Torres—not merely incidental to the immediate gratification he derived from [the minor's] conduct"). But the language "*the* purpose" requires that the filming be at the very least a significant purpose in the sexual conduct itself, not merely incidental. *See Mortensen v. United States*, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944) (interpreting "for the purpose of" under the Mann Act to be "the dominant *696 motive"). Two of our sister circuits have recognized this, defining "the purpose" as "one of the *dominant*" motives or purposes under § 2251(a). *See United States v. Sirois*, 87 F.3d 34, 39 (2d Cir. 1996); *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009).

6

The minimum penalty under 18 U.S.C. § 2251 further underscores the requisite seriousness of intent. "Historically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with *mens rea*." *Staples v. United States*, 511 U.S. 600, 616, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). Congress has provided a mandatory minimum of fifteen years' imprisonment for violation of § 2251(a), and it is not our job to question the legislature's judgment. 18 U.S.C. § 2251(e). In fact, many of those who produce visual depictions of child pornography may deserve far more than the mandatory minimum, given the deeply harmful effects that such production can wreak on individual lives and on our social fabric, and given the special solicitude that Congress has shown for minors in our society. *See New York v. Ferber*, 458 U.S. 747, 757–58, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). But the stiffness of this minimum penalty also demonstrates that Congress meant what it said when it wrote that creating a visual depiction must be "the purpose" in engaging in the sexual conduct. Instructing a jury that it is sufficient to find filming was "a purpose" that could "arise at any time" during the sexual conduct is for courts to improperly greenlight a fifteen-year minimum sentence for someone who engages in sexual conduct and takes a picture. *See United States v. Palomino-Coronado*, 805 F.3d 127, 132 (4th Cir. 2015).

This is unsurprising. The Constitution vests Congress with enumerated powers to punish certain behavior, while reserving the general police power for the States. U.S. Const. art. I, § 8; *id.* amend. X; *see also United States v. Lopez*, 514 U.S. 549, 551, 561, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Thus, given the structure of our federal criminal justice system, we would expect that state laws criminalizing sexual activity with minors would encompass a broader range of conduct than federal laws. Here, for example, the criminal conduct of placing minors in sexual activity is captured by criminal statutes other than § 2251(a)—in particular, state sexual abuse provisions, which often impose strict liability. *See, e.g.*, Md. Code Ann., Crim. Law § 3-304; N.C. Gen. Stat. § 14-27.25; S.C. Code Ann. § 16-3-655. This includes the state sexual abuse provision under which the defendant was originally—and could still be—prosecuted. *See* Va. Code. Ann. § 18.2-63 (statutory maximum of ten years).

Our own precedent confirms both the breadth and the limits of § 2251(a). In *Palomino-Coronado*, we vacated a defendant's conviction because "[t]he single photo [was] not evidence that Palomino-Coronado engaged in sexual activity with [the minor] *to* take a picture, only that he engaged in sexual activity with [the minor] *and* took a picture." 805 F.3d at 132. Accordingly, § 2251(a) does not criminalize a spontaneous decision to create a visual depiction in the middle of sexual activity without some sufficient pause or other evidence to demonstrate that the production of child pornography was at least a significant purpose. Adducing "a purpose" arising only at the moment the depiction is created erroneously allows the fact of taking an explicit video of a minor to stand in for the motivation that animated the decision to do so. It is for this reason that while the image itself can be probative of intent if the prosecution makes a sufficient

7

> connection, it cannot be the only evidence. *697 *See id.* at 133. That would impermissibly reduce the statute to a strict liability offense. *Id.* at 132; *see also Torres*, 894 F.3d at 312 ("We do not believe—so do not hold— that ''the 'purpose' element of § 2251 is proven by the mere fact that the Defendant personally took a photo of ... a minor engaging sexually explicit conduct.' " (quoting *United States v. Fifer*, 188 F. Supp. 3d 810, 819–20 (C.D. Ill. 2016))).
>
> Thus the district court's instructions failed to follow the plain language of the statute and this court's precedent. This error of law was an abuse of discretion. *See United States v. Hurwitz*, 459 F.3d 463, 474 (4th Cir. 2006) ("By definition, a court abuses its discretion when it makes an error of law."). The court's first instruction did not explain to the jury that it must find some predominance of purpose consistent with Congress's choice to employ the phrase "the purpose" rather than "a purpose." The second, clarifying instruction compounded this error and swept too far in proclaiming that the jury could "find that the defendant engaged in sexual conduct with N.C. for *a purpose* of producing a visual depiction of that conduct if [it found] that defendant engaged in that sexual activity for that purpose *at any point during that sexual conduct.*" J.A. 976 (emphases added). The instructions invited the jury to believe, mistakenly, that "a purpose" to film could spontaneously arise at the moment the video was taken.
>
> As the above discussion shows, any interpretation of § 2251(a) must give full effect to the specific intent element. A purpose that arises at any time would include the moment of the visual capture itself and erase the specific intent mandate from the statute. *See Palomino-Coronado*, 805 F.3d at 130–31. The district court was correct, however, that the government need not prove the defendant's "sole" purpose in the sexual encounter was to produce a visual depiction. J.A. 945. Indeed, that interpretation would lead to unacceptable and unintended results, as "[t]he criminal law applies to everyone, not just the single-minded." *Sirois*, 87 F.3d at 39 ("[A] person who transports children across state lines both to engage in sexual intercourse with them and to photograph that activity is no less a child pornographer simply because he is also a pedophile."); *see also Palomino-Coronado*, 805 F.3d at 131.

*McCauley*, 983 F.3d at 695–97 (4th Cir. 2020). Thus, what becomes clear is that there must be an intent to use the minor to engage in sexually explicit conduct, for the purpose of producing a visual depiction and that intent must be a dominate one and not one that arise spontaneously in the moment.

For example, in *Fortier*, the 8th Circuit did not rely simply on the fact that Fortier took pictures of the minor engaged sexually explicit conduct but looked to other evidence of intent in concluding that Fortier used the minor to engage in sexually explicit conduct for the purpose of creating those pictures. First, Fortier had a broad collection of other videos and recordings of the alleged victims and others. *Id*. at 567. Second, and perhaps most importantly, the Court looked at the pictures themselves, the way they were produced and what they depicted. *Id*. at 567-68.

> The other is the content of the videos he made that night. They contain "extreme close-ups" of C.J.'s, S.K.'s, and Fortier's genitalia, with a focus on penetration. In one, Fortier instructs C.J. to change positions—possibly, as he suggests, for a more enjoyable experience, or maybe, as the government posits, for a better camera angle. The fact that the camera angles "matched" those of earlier recordings allowed the jury to draw the inference that the recordings themselves were no accident and that he was trying to perfect them for future viewing. *See United States v. Boyle*, 700 F.3d 1138, 1145 (8th Cir. 2012) (holding that "repeated adjustments of the camera" could show that the defendant intended to capture a "sexually explicit" image); *accord United States v. Torres*, 894 F.3d 305, 312 (D.C. Cir. 2018) (concluding that the presence of the perpetrator's hand in the photograph "manipulat[ing]" the minor's penis "so that the photo would accentuate it" supported a finding of purpose).

*Id*. According to the 8th Circuit, this evidence permitted the jury to conclude that at least one of Fortier's dominant purposes in using the minor to engage in sexually explicit conduct was to produce a visual depiction of that conduct. *Id*.

In contrast to the conduct of Fortier, and much more like this case, stands that of *U.S. v. Palomino-Coronado*. In *Palomino-Coronado*, the 4th Circuit Court of Appeals reversed the jury's verdict finding the Government did not prove that Palomino-Coronado, used the minor with the requisite intent to produce a visual depiction of the conduct. *Palomino-Coronado*, 805 F.3d 127 at 130-133, (4th Cir. 2015). Again, the Court's reasoning is persuasive and worth quoting in total:

> As the text indicates, § 2251(a) contains a specific intent element: the government was required to prove that production of a visual depiction was a purpose of engaging in the sexually explicit conduct. *Id.; see United States v. Lebowitz,* 676 F.3d 1000, 1013 (11th Cir.2012). "It is simply not enough to say 'the photo

9

speaks for itself *and* for the defendant and that is the end of the matter.' " *United States v. Crandon,* 173 F.3d 122, 129 (3d Cir.1999) (discussing the purpose requirement in the related cross-reference under \*131 U.S.S.G. § 2G2.1(c)(1)). That is, a defendant must engage in the sexual activity with the specific intent to produce a visual depiction; it is not sufficient simply to prove that the defendant purposefully took a picture. Nonetheless, courts do not require that a defendant be single-minded in his purpose to support a conviction under § 2251(a). E.g., *Lebowitz,* 676 F.3d at 1013; *United States v. Morales-de Jesus,* 372 F.3d 6, 21–22 (1st Cir.2004); *see also United States v. Cox,* 744 F.3d 305, 309 (4th Cir.2014) (considering "purpose" in the context of the application of a cross-reference under § 2G2.1(c)(1) of the sentencing guidelines governing production of some child pornography offenses).

We have not previously considered a challenge to the sufficiency of the evidence in a conviction under § 2251(a). Courts have sometimes been able to rely on direct evidence indicating a defendant's purpose. *E.g., Lebowitz,* 676 F.3d at 1013. In *Lebowitz,* for example, the minor testified that he and the defendant "discussed videotaping a sexual encounter prior to the recording." *Id.; see also United States v. Lee,* 603 F.3d 904, 918 (11th Cir.2010) (holding that the defendant's description of "how many photographs he wanted of each girl" and "how he wanted the girls to pose" contributed to the reasonableness of the jury's finding that he intended to use the minors in the production of child pornography).

More often, however, courts are presented only with circumstantial evidence to show that a defendant acted with purpose. For example, defendants' actions, instructions, and descriptions of the visual depictions produced or to be produced might indicate purpose. E.g., *Morales–de Jesus,* 372 F.3d at 21–22. In *Morales–de Jesus,* finding the evidence sufficient, the First Circuit pointed to the fact that the defendant "actively concealed from the minor the fact that he was videotaping her." *Id.* at 21. The defendant also gave "specific instructions regarding certain positions he wanted her to assume relative to the camera, instructed her on what to say while the camera recorded their activities, and used a remote control to zoom the camera in and out while they were having sex." *Id.* at 21–22; *see also United States v. Sirois,* 87 F.3d 34, 42 (2d Cir.1996) (holding that the jury could have inferred intent in part based on the defendant's "direct[ing] the participants to move their sexual activity to different parts of the lean-to, so that he could more easily videotape them").

Courts have also found the number of sexually explicit recordings or depictions indicative of purpose. *E.g., United States v. Ortiz–Graulau,* 526 F.3d 16, 19 (1st Cir.2008). In *Ortiz–Graulau,* the defendant had taken over fifty pictures depicting sexual contact between him and a minor or of the minor in a sexually explicit position. *Id.* at 18. The First Circuit found that the "number of photographs, many of sexually explicit poses, permit[ted] a strong inference that some of the conduct occurred in order to make the photographs." *Id.* at 19 (citing *Morales–de Jesus,* 372 F.3d at 22); *see also Morales-de Jesus,* 372 F.3d at 22 ("[A] reasonable

10

jury also could infer that since Morales taped sexual encounters with the minor more than once, he induced the girl to engage in sex acts for the purpose of creating videotapes of their encounters.").

Finally, courts have considered evidence of "purposeful conduct" surrounding the photographic or video equipment used. E.g., Lebowitz, 676 F.3d at 1013; *see also Morales–de Jesus,* 372 F.3d at 22. In *Lebowitz,* the Eleventh Circuit cited evidence that the defendant brought the camera and a tripod with him, carried them through the minor's bedroom window, and *132 set them up. 676 F.3d at 1013. Moreover, evidence showed that "[t]he sexual encounter occurred in [the minor's] bedroom only because there was not room for the recording equipment in Lebowitz's car." *Id.* Meanwhile, in *Morales–de Jesus,* "[a]fter the defendant had taken the minor to a motel room to have sex for the fourth time, he returned to his car and retrieved the recording equipment that he kept there." 372 F.3d at 22. The First Circuit also found that the fact that the defendant "kept sexual aids in the same bag with the camera" might also have been enough for the jury to find that the defendant had planned to videotape the encounters. *Id.; see also Sirois,* 87 F.3d at 37, 42 (finding relevant that both actors had brought recording equipment: one a camera and a videorecorder and the other another camera).

Here, the evidence produced at trial does not support the conclusion that Palomino–Coronado engaged in sexual activity with B.H. for the purpose of producing a picture. No direct evidence or statements indicating intent were offered. There was no testimony that Palomino–Coronado gave any instruction or direction to B.H. as part of their sexual encounter that would indicate purpose. *See, e.g., Morales–de Jesus,* 372 F.3d at 21–22; *Sirois,* 87 F.3d at 42.

All that the record shows is that Palomino–Coronado had engaged in sexual activity with B.H. on more than one occasion; that he had taken several non-sexually explicit pictures of her with his cell phone in his basement; and that one sexually explicit picture was taken, in which B.H. identified herself and Palomino–Coronado as the two people depicted. Without more, these facts do not support the conclusion that Palomino–Coronado engaged in sexual activity with B.H. in order to take a picture. To hold otherwise would eliminate the specific intent requirement, turning § 2251(a) into a strict liability offense.

We find it significant here that only one photograph was taken and subsequently deleted.[4] The government argues that there is no requirement that a defendant take a certain quantity of images or engage in a certain amount of preparation to determine whether he has acted for the purpose of producing a visual depiction. We agree as a general matter. Although, when pressed at oral argument, the government could not provide any authority upholding a conviction challenging the specific intent element where only one photograph was taken.

In this instance, where Palomino–Coronado engaged in sexual activity with B.H. over many months, the fact that only one image was produced militates against

11

finding that his intent in doing so was to take a picture. The single photo is not evidence that Palomino–Coronado engaged in sexual activity with B.H. *to* take a picture, only that he engaged in sexual activity with B.H. *and* took a picture. *Cf. Crandon,* 173 F.3d at 130 (acknowledging that "[s]et in context," the fact that the defendant had taken close to fifty pictures of the minor, only two of which were sexual in nature, "could support [the defendant's] contention that his purpose in taking the photos was the memorialization of their time together or his love for her—a purpose other than producing sexually explicit material"). To be sure, a situation might well present itself where only one photograph was taken but where there was other evidence of purpose, and we do not hold that a sufficiency challenge would necessarily fail in that instance. But that is not this case.

The government contends that Palomino–Coronado's frequent use of the camera on his cell phone showed that he "regularly and intentionally used his phone to take pictures of all aspects of his life." The government also asserts that the fact that the photo at issue focused on Palomino–Coronado's genital area as he engaged in sexual activity with B.H. demonstrates that the photo was not unintentionally or inadvertently captured.

But the government does little to explain how these conclusory statements indicate that Palomino–Coronado initiated the sexual activity with B.H. for the purpose of producing the picture. Instead, the government appears to conflate the voluntary act of taking the picture with the specific intent required under the statute.

The fact that Palomino–Coronado brought his cell phone with him to the basement does not support a finding of purpose. Palomino–Coronado's use of his cell phone to take pictures is a far cry from the tripod and other recording equipment used to support purpose in other cases. *See, e.g., Lebowitz,* 676 F.3d at 1013; *Morales–de Jesus,* 372 F.3d at 22. Whereas those devices demonstrate some sort of forethought, planning, or intent, the mere presence of a cell phone is not evidence of purpose. Cell phones are now ubiquitous, especially for teenagers, and almost always within reach. We do not conclude that use of a cell phone will never be evidence of purpose under § 2251(a); instead, we simply hold that Palomino–Coronado's use of his cell phone in this instance does not meet the specific intent requirement under the statute.

*Palomino-Coronado*, 805 F.3d at 130–33.

Moreover, the mens rea requirement in § 2251(a) has essentially been read into the varying cross references in §2G of the federal sentencing guidelines. See *United States v. Crandon,* 173 F.3d 122, 129 (3d Cir.1999); *U.S. v. Cox*, 744 F.3d 305 (4th Cir. 2014)[3].

In this case, there is little if any evidence on which this Court can conclude that Mr. Smith caused the minor victim to engage in the sexually explicit conduct with the purpose of creating a visual depiction of that conduct. To begin with, the discovery file indicates that Mr. Smith did not initiate the sexual contact on this occasion. Smith does not point this out to somehow absolve him of his bad actions but merely to present the context in which this particular instance of sexually explicit conduct occurred. This is important because it is this instance, which Probation and the Government seek to utilize in applying the cross reference and therefore the circumstances of this instance are highly relevant to whether Mr. Smith acted with the requisite purpose in mind. Mr. Smith was at Lowes and had no purpose or plan to see the minor victim that evening and had no intent to engage in or have her engage in any sexually explicit conduct that evening. Thus, it maybe that the conduct at issue does not even satisfy the actus reus elements of the cross reference. Regardless, the fact the Mr. Smith did not initiate the conduct on this occasion is evidence that he did not intend to have the minor victim engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.

Moreover, the Government has discovered and disclosed a number of text messages and other communications between Mr. Smith and the minor victim, many of which are of a sexual nature. Though there is a multitude of communication, substantially more than not, which is not in any way sexual in nature, the Government has presented much of which is sexual in nature. In none of the communications does Smith or the minor victim discuss filming her, taking photos of

---

[3] Note that *Palomino-Coronado* was decided subsequent to *Cox*.

her or the like. There is one conversation where the minor victim tells Smith she has a video of herself masturbating which she recorded on a previous occasion. Smith indicates a desire to see it, but he never asks her to make a video, take a picture, and did not initiate any conversation about photos or videos. In short, nothing points to a purpose to videotape or photograph the minor victim, though there was plenty of opportunity to discuss that very topic.

As for the video itself, which under the caselaw cited above is insufficient by itself to establish the requisite intent, it appears to be a hastily taken video, on a cell phone, done during the act of oral sex. As in *Palomino-Coronado*, the single video is not evidence that Smith engaged in sexually explicit conduct for the purpose of creating the video but that he engaged in sexually explicit conduct and took a video. *Id*. at 132-133. Even under the cross reference, this conduct does not meet the necessary mens rea requirement that he engaged in the prohibited activity with at least a purpose to make a production. At most it demonstrates that sexual activity occurred and a video of it was taken. Smith does not question that the video was taken on purpose, but that is not the standard. "A defendant must engage in the sexual activity with the specific intent to produce a visual depiction; it is not sufficient simply to prove that the defendant purposefully took a picture." *Id*. at 130.  And that is all that can be proved in this case; that a video was taken.

Lastly, everyone has a cell phone. Smith had no special equipment. It does not appear the video was manipulated. There was one, single, relatively short video taken. None of the factors cited in the cases above, which Circuit Courts have relied on for the circumstantial inference that a defendant acted with the purpose to produce a visual depiction are present in this case. Applying the cross reference under these facts literally vitiates any mens rea requirement. Without some evidence that Mr. Smith went to the minor victim's residence that evening (at her

invitation) to engage in sex for the purpose of videotaping it, the cross reference cannot and should not apply. Therefore, Smith's guideline range should be calculated without applying the cross reference.

## V.  SENTENCING FACTORS AND OTHER CONSIDERATIONS AS APPLIED TO MR. SMITH

### A.  Nature and Circumstances of the Offense

It goes without saying this was a serious offense. Thus, Smith will not try and suggest otherwise. Smith does take issue with one of the specific offense conduct enhancements and the Chapter 4 enhancement. Firstly USSG §2G1.3(b)(3), adds a two-point enhancement for use of a computer in the enticement of a minor. Computers, cell phones and the like are ubiquitous today. Students are issued school computers. Most high school students have cell phones. Virtually all adults have both a computer and a cell phone. More people regularly communicate through these devices than through any other method. Thus, the two-level enhancement for use of such devices is wholly outdated. The enhancement overstates the seriousness of the offense because nary an offense of any type is committed these days without use of such a device. Thus, the court should consider a reduction in the sentence because this enhancement is antiquated and should no longer apply.

Secondly, Smith believes the five-level enhancement in USSG §4B1.5(b)(1) overstates the nature of his offense. Mr. Smith's offense is undoubtedly serious. But he cannot be said to be a repeat and dangerous sexual offender. There is no question he had sex with a minor on two occasions. There is no question he was in a position of authority over the minor. But he has no criminal history and no history committing such offenses. Nothing in his background nor this case suggests that he will commit this or a similar offense again. The guideline may apply, but

Smith asks the Court to give some consideration to the fact that this is his first offense and that the "pattern" established involved two sexual encounters with the same person. Smith is not a repeat offender in the normal sense of the word, and with treatment that he is sure to receive within the BOP he likelihood of recidivating will greatly diminish, not too mention the fact that his advanced age by the time he is released also results in a lower likelihood of reoffending.

### B. Need To Avoid Unwarranted Sentencing Disparities

This is a bit of a tricky case as it relates to the need to avoid unwarranted sentencing disparities. The vast majority of cases similar to Mr. Smith's are prosecuted in the State Courts of Iowa. Undersigned Counsel has represented other teachers who have had sex with their students[4]. Undersigned Counsel knows of other lawyers who have represented teachers, coaches, counselors and other professionals who have had sex with minor students, patients and players. All of the prior cases undersigned is aware of were prosecuted in state court[5]. All of those cases could have been prosecuted federally because use of the cell phones and interstate networks are, in fact, ubiquitous in daily life and communication. Why the federal government chose to prosecute Mr. Smith, and not those many others still remains a mystery. The only other federal nexus, and its actually the same federal nexus, is the use of the cell phone to take a video. But, as thoroughly discussed above, the facts of this case do not rise to a federal production offense.

Thus, the heartland of sentencing in these types of cases really relates back to sentences in the State Courts of Iowa. In Iowa, Sexual Exploitation by a counselor, therapist or school employee is a class "D" felony punishable by five years imprisonment. Iowa Code § 709.15.

---

[4] In fact, undersigned once represented a female teacher who had sex multiple times with a minor boy and received a deferred judgment sentence. That teacher and student communicated via cell phone and the federal government did not blink an eye.
[5] Which is not to say Mr. Smith is the only person ever prosecuted in federal court for a similar offense, but it is not nearly as common as state prosecution.

Alternatively, the facts of this case would provide for a charge of Sex Abuse in the 3rd Degree under Iowa Code § 709.4. Sex Abuse 3rd is punishable as a "C" felony in Iowa with imprisonment up to ten years. Thus, if Smith received two class "C" felonies for each instance of sexual conduct, he could be sentenced to up to twenty years in prison. Of course, in Iowa, parole exists. After completing the requisite sex offender treatment Smith would receive a little over half off his sentence for good time and could be paroled before that. Smith's actual time served on this sentence would more likely be in the 5-10 year range. That is the heartland of sentencing for the crimes engaged in by Mr. Smith. Even if Mr. Smith received two class "C" felonies and two class "D" felonies he would only serve around 10-14 years in prison.

To be fair, drug crimes are punished significantly less harshly in state court as well. However, drugs almost always travel across state lines, have a significantly larger impact on commerce, and are often trafficked through networks of people located across the country. Not so with the type of offense Mr. Smith is charged with. This is largely a discreet state-based offense. The only federal nexus is the use of the computer/cell phone and that is used by all persons, everywhere today as a primary means of communication. If the federal government wanted to be in the business of prosecuting almost every significant crime, it likely could because they almost always include some use of an interstate communications network. Yet, that seems not what federal criminal law intended for. The point is that the heartland of sentencing in this type of discreet offense still lies where the vast majority of these cases are rightly prosecuted, in state court. Mr. Smith now faces substantially more time in custody and a mandatory minimum sentence, when most similarly situated offenders do not. This should bear on the reasonableness of the sentence imposed.

    **C. Jail and Prison in the Age of Covid-19**

Mr. Smith has been in the Polk County Jail for some ten months. In that time, undersigned can think of at least two outbreaks of Covid-19 that have occurred, including one at current. Courts have widely recognized that prison life is much harder now, given the restrictions the pandemic has placed on jails, prisons, and inmates. This Court should consider that prison life is now more difficult when fashioning a sentence, it feels is appropriate.

## VI. <u>VARIANCE UNDER 3553(a)</u>

### 1. Recommended Sentence

As discussed in above, the Court is to filter the Guideline start range through the factors in 3553(a) to achieve a sentence which is sufficient but not greater than necessary to achieve the purposes of 3553(a). In doing so the Court is to consider the circumstances of each Defendant individually and not presume the reasonableness of the guideline range.

There is no question about the seriousness of this offense. The mandatory minimum sentence reflects the seriousness of the crime. But Mr. Smith's guidelines, as calculated by Probation call for a sentence of thirty years to life for an individual who almost no criminal history. Thirty years to life when most others who have committed very similar offense are prosecuted in state court and serve less than the mandatory minimum sentence applicable in this case. Even if the cross reference is not applied, and it should not be, Mr. Smith's guidelines range calls for a sentence of 235-293 months (19.5 to 24.5 years). This far exceeds the heartland of sentencing for similarly situated defendants. If the Court simply acknowledged that the use of a computer enhancement is outdated, the two-level reduction would provide a much more reasonable sentence at fifteen years and much closer to similarly situated defendants. Or if the

Court reduced a level for the outdated enhancement and one for the difficulties of prison life due to Covid, the same would be true.

In short, however the Court views the case, and the potential variances it could award, a sentence between ten and fifteen years is sufficient but not greater than necessary to achieve the objectives of sentencing. Any sentence the Court would likely give will be greater than a similarly situated defendant as normally prosecuted and thus, reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence and protect the public. Moreover, between ten and fifteen years provides plenty of needed time for treatment and rehabilitation which research proves works for sexually based offenders. It also provides significant time for Mr. Smith to learn new skills to use when he is released and will permit him plenty of time to continue the work he has started in the Polk County Jail, educating his fellow inmates. It is possible that a sentence of ten to fifteen years might also give him the ability to be released in time to rebuild a relationship with his young twin boys, the one hope he continues to hold.

Respectfully submitted,

STOWERS & SARCONE PLC
West Glen Town Center
The Hub Building, Suite 130
650 South Prairie View Drive
West Des Moines, IA  50266
Phone: (515) 224-7446
Fax: (515) 225-6215


By:___/s/ Nicholas Sarcone____
    Nicholas Sarcone
    Attorney for Defendant,
    Abraham Smith

Original filed.

Copies to:  Adam Kerndt Assistant U.S. Attorney, 110 E. Court Avenue Des Moines, IA  50309
            Office: (515) 473-9300    Fax: (515) 473-9292

**PROOF OF SERVICE**

| |
|---|
| **The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on February 7, 2020.** |
| **By:**                    ☐ **CM/ECF** |

*Signature* _____/s/ Amy Pille_____