UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cr-00212 |
| | ) | |
| ABRAHAM CHRISTOPHER SMITH, | ) | GOVERNMENT'S |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |

## INTRODUCTION

Smith, a man in his late 30s, sexually exploited a vulnerable 15-year-old, Minor Victim #1. He exchanged volumes of sexually charged messages with Minor Victim #1. He solicited and received sexually explicit photos and videos from Minor Victim #1. He had sex with Minor Victim #1 on two separate dates. And he video-recorded Minor Victim #1 performing oral sex on him. Smith was able to cultivate this illegal relationship and perpetrate his crimes because he was a trusted teacher at Southeast Polk High School, where Minor Victim #1 attended. This is exceptionally serious conduct by a defendant who abused his position in an egregious fashion.

## SENTENCING CALCULATION & OBJECTIONS

### A. Guidelines Calculation

There are no factual disputes relating to the PSR. The government agrees with the guidelines calculation set out in the PSR: total offense level 42 with a criminal history category I, 360 months to life in prison. The government agrees

with the probation office that the cross-reference in USSG §2G1.3(c)(1) applies because the offense involved defendant causing or permitting a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. Accordingly, § 2G2.1 applies because it results in a higher offense level than §2G1.3. Defendant, however, asserts that the cross-reference to §2G2.1 does not apply and, thus, this case presents with a total offense level of 38, 235-292 months in prison. If the Court does not apply the contested cross-reference, the government agrees the advisory guideline would then be total offense level of 38, 235-292 months in prison.

A mandatory minimum of 120 months and statutory maximum of life applies because the offense of conviction is Enticement of a Minor, 18 U.S.C. §2422(b).

> **B.** **The offense involved defendant causing or permitting a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.**

The guidelines state:

"If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply §2G2.1, if the resulting offense level is greater than that determined above." USSG §2G1.3(c)(1).

"Application of Subsection (c)(1).—The cross reference in subsection (c)(1) is to be construed broadly and includes all instances in which the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice, advertisement or other method, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct. For purposes of subsection (c)(1), *sexually explicit conduct* has the meaning given to that term in 18 U.S.C. §2256(2)." USSG §2G1.3, comment. (n.5(A)) (underline added).

The parties agree that Defendant used Minor Victim #1 to engage in sexually explicit conduct on October 24, 2020. And that the 1 minute and 15 second video that the Defendant made on his cell phone of Minor Victim #1 performing oral sex on him on that date is a visual depiction of sexually explicit conduct. The issue for the Court boils down to this: When Defendant used Minor Victim #1 to engage in sexually explicit conduct on October 24, 2020, did he do so *for the purpose of* producing a visual depiction? The answer to this question is yes.

The Eighth Circuit has made clear in multiple recent decisions that the parallel specific-intent requirement in §2251(a) is satisfied in a case where a defendant has sexual contact with a minor and also creates visual depiction if there is "sufficient proof that <u>one of</u> [the defendant's] <u>'dominant purposes'</u> was to create a visual depiction of his sexual acts" with the minor. *United States v. Fortier*, 956 F.3d 563, 567 (8th Cir. 2020)(underline added); see also *United States v. Frommelt*, 971 F.3d 823, 828 (8th Cir. 2020)(the specific-intent requirement met because jury "could conclude that one of Frommelt's dominant purposes for using [minor] to engage in sexually explicit conduct was to produce the video.") Creating a visual depiction does not have to be Defendant's sole or even primary purpose for using the minor to engage in sexually explicit conduct.[1] See e.g., *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009)(government "need not prove that producing the

---

[1] Defendant's reliance on *United States v. McCauley*, 983 F.3d 690 (4th Cir. 2020) is misplaced. The Fourth Circuit is a Circuit outlier in that it stands alone in requiring the government to "prove that creating a visual depiction was 'the purpose' of an accused for engaging in sexual conduct, not merely 'a purpose' that may happen to arise at the same instant as the conduct." 983 F.3d at 695.

photographs was Raplinger's sole purpose for engaging in the sexual activity."); *United States v. Hughes*, 798 Fed.Appx. 388, 390-91 (11th Cir. 2019)(the use of "the" in §2251(a) "does not require that the single-minded purpose of the sexual activity be the production of a visual depiction" because "dual purposes are sufficient for a conviction, and [courts] need not concern [them]selves with whether the illegal purpose was dominant over other purposes.")(cleaned up); *United States v. Frei*, 995 F.3d 561, 567 (6th Cir. 2021)("Section 2251(a) does not have a sole-purpose provision and no court has held that the defendant must be single-minded in his conduct.") And the Eighth Circuit has not imposed any temporal restriction or test as to when exactly a dominant purpose to create a visual depiction can arise. As such, a dominant purpose to create a visual depiction can arise swiftly. It can arise during sexual activity that had already commenced.[2] There is no requirement that Smith had to "plan" in advance.

Stated another way, the government must only prove—by a preponderance of the evidence—that one of Smith's dominant purposes, at any time, in using Minor Victim #1 to engage in sexually explicit conduct the night of October 24 was to create a visual depiction of her engaging in sexually explicit conduct. At minimum, the evidence sufficiently shows that one of Smith's dominant purposes for

---

[2] The Fourth Circuit saw differently in *McCauley* saying it was error for a court to instruct a jury that it was sufficient to find filming was a purpose that could arise at any time during the sexual conduct. The Fourth Circuit is not persuasive. Notably, that Court was focused on its concern with greenlighting a 15-year mandatory minimum production count if making the depiction was a spontaneous decision mid-act with no other evidence that making a depiction was at least a significant purpose. In the instant case, the parties are litigating an advisory guideline issue not a conviction—let alone a 15-year mandatory minimum conviction. And there is significant other evidence in the record to indicate making the video was a significant purpose.

continuing to use Minor Victim #1 to perform oral sex on him was so that he could record the final 1 minute and 15 seconds of it. This suffices. That he may have also begun the oral sex and continued it for instant sexual gratification purposes is of no import. That instant sexual gratification may have been the primary reason is of no import. But there is also substantial evidence to support that Smith formulated an intent to record even earlier—that a dominant purpose to record arose even before mid-act.

First, even absent the October 24 video, the evidence illustrates that Smith was keenly interested in obtaining sexual depictions of Minor Victim #1. As early as October 11, Smith asked Minor Victim #1 to send him sexually charged pictures and videos of Minor Victim #1. And Smith made abundantly clear that he very much enjoyed seeing the sexual depictions that Minor Victim #1 subsequently sent him. See e.g., PSR ¶43, 44, 47. Indeed, Smith prized these numerous depictions of Minor Victim #1 so much that he saved them in his iPhone "private photo vault" application—where they were hidden behind a password or pattern lock. PSR ¶¶73-76. He kept his prized depictions safeguarded there so that he could revisit them and relive the experiences they captured.

Second, independent of Minor Victim #1, Smith has an established interest in video recording and capturing visuals of his sexual experiences. In Smith's private photo vault application were multiple pictures that Smith took of his wife (now former) while they were engaging in sex acts. In that application Smith also kept multiple videos of him and his wife engaging in sex acts. Smith recorded these

5

videos. Some of the videos clearly illustrate an intention to pose himself and his wife to obtain better footage. One of the videos Smith created was of his wife performing the same sex act—and with the same vantage point—as the video Smith took of Minor Victim #1. Simply put, Smith is no amateur videographer when it comes to his sexual activity.

Finally, the 1 minute and 15 second video Smith took on October 24 was not just purposeful and intentional. It was far beyond incidental. Smith created it in a thoughtful and careful fashion. During the 75 seconds Smith held his phone to record the sex act, he adjusted his camera angle—and manipulated Minor Victim #1—to ensure that he was capturing exactly what he wanted on his trophy video. He gives Minor Victim #1 commands. He saved the video in his private photo vault alongside his other prized sexual videos and pictures.

### C. **Exhibits and Testimony.**

Four days prior to sentencing the government will provide the Court with a thumb drive containing a copy of all the image files and video files that law enforcement located in Smith's private photo vault application. There are 37 files in total. This information has been available to the defense as part of "in office only" discovery from the early stages of this case. The government will ask that the thumb drive be admitted at sentencing under seal as Government Exhibit 1. The government will not play or display any of these files at sentencing. And the government does not intend to call a witness to lay foundation if Defendant stipulates to the following:

6

- GX 1 contains all the video and image files that law enforcement located in Smith's private photo vault application on Smith's iPhone.

- That the files with the following file names depict Defendant's now former wife and that Defendant made these pictures and videos:

```
1D0C9A9F-F2CD-4690-B4E5-13FFD5AE325F
9CB82431-8ED0-4B53-920F-10DD5F6B838E
19E4CFB5-5FFD-4096-8672-7A70D1ABBA3E
37A7CB86-E162-48FC-9744-F39D3D5F7320
47F64E68-D4F6-44F8-AE15-CA29FDB5716D
789FDAEF-5730-4197-904B-D8F9DF76F2DB
C6CA15A7-57DB-4756-8337-F97398F49C71
C3685DBE-48D2-4E02-8BC9-C0C166E17626
DCC012CA-59D6-4E3C-9A46-487AD26DEA7C
FDF583CE-2CF7-4931-B03A-3AAD307E5F2A
FFC6817D-A30C-4193-B255-0D3C21BB6F0D
```

- That the files with the following file names depict Minor Victim #1:

```
1E28F291-A394-4FCF-BC98-38EA12524A9A
5DB5F58D-FB6A-4B1C-AA3A-605C488D9451
6AC8FDE8-F05C-4D22-8FD6-0E34465E2657
8BE3942C-A375-4F5F-BC7D-26B9A539787F
581A736D-D79D-4869-8776-83B95C4B20AE
668F65EC-395A-47DD-806E-F474609571C2
5386C29F-4FC2-4621-9C2E-CB00CE036D4E
7101F3E6-63EF-45A2-AE27-3276FF24F1A7
11632C72-9CAD-4CA1-8E00-0DCDE147B7D2
62527929810__639AA9A7-C84D-4680-9CEE-F7327DFB07A3
FB44AA71-DA37-4B65-926B-C77AFF3E4BF9
```

**THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 360 MONTHS**

The sentencing statutes inform this court that it must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or

7

vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The court, in determining the particular sentence to be imposed, shall also consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The sentence must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The government will ask the district court to sentence the Defendant based upon an advisory range of 360 months to life. The government recommends a 360-month sentence.

This conduct is of the most serious kind. Smith was a teacher. He abused that position to groom a 15-year-old student for repeated sexual activity. And Smith knew that Minor Victim #1 was uniquely vulnerable. See PSR ¶¶ 28, 63. Not only did he entice this victim, but he also solicited and received sexually explicit material from her, and he produced a video of her engaging in a sex act. The victim's parents entrusted him to tutor the victim. Defendant repaid that trust by exploiting their child. Smith's text messages illustrate the callous selfishness with which he repaid their trust. PSR ¶¶24-25.

Defense makes much of the "many" other teachers who have had sex with their students and that in defense attorney's experience most—if not all—are prosecuted in Iowa state court. The defense indicates that these offenses in state court are punished with class "D" felonies often which are punishable by up to five years in prison. As a result, defense asks this court to temper its sentence so as to

not impose an "unwarranted sentence disparity" among teachers who have sex with students. First, it is well-established that the need to avoid "unwarranted sentence disparities" directive in § 3553(a)(6) concerns only disparities among federal defendants. See, e.g., *United States v. Jeremiah*, 446 F.3d 805 (8th Cir. 2006). In reality, a sentencing court is prohibited under § 3553(a)(6) from even "consider[ing] a potential federal/state sentencing disparity" when imposing a defendant's sentence. *Id.* at 808; see also *United States v. Schaller*, 733 Fed.Appx. 335 (8th Cir. 2018). Clearly the short state sentences are not adequately deterring teachers and others in a position of trust from sexually exploiting kids. This Court must impose a sentence that provides deterrence.

## CONCLUSION

This Court should sentence the Defendant to 360 months.

        Respectfully submitted,

        Richard D. Westphal
        Actin United States Attorney

By:  /s/ Adam J. Kerndt
       Adam J. Kerndt
       Assistant United States Attorney
       U.S. Courthouse Annex
       110 East Court Avenue, Suite 286
       Des Moines, IA 50309
       Tel: (515) 473-9300
       Fax: (515) 473-9292
       Email: Adam.Kerndt@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2021, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system. I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

\_\_\_\_U.S. Mail \_\_\_\_\_ Fax \_\_\_\_\_Hand Delivery

  X  ECF/Electronic filing    \_\_\_Other means

UNITED STATES ATTORNEY

By: /s/ Adam J. Kerndt
      Assistant U.S. Attorney